## NORTHERN PACIFIC RAILROAD COMPANY *v.* BABCOCK.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

No. 328. Submitted March 28, 1894. — Decided May 26, 1894.

In an action by the representatives of a railroad employé against the company, to recover damages for the death of the employé, caused by an accident while in its employ, which is tried in a different State from that in which the contract of employment was made and in which the accident took place, the right to recover and the limit of the amount of the judgment are governed by the *lex loci*, and not by the *lex fori*.

A railroad company is bound to furnish sound machinery for the use of its employés, and if one of them is killed in an accident caused by a defective snow-plough, the right of his representative to recover damages therefor is not affected by the fact that some two weeks before he was sent out with the defective machinery, he had discovered the defect, and had notified the master mechanic of it, and the latter had undertaken to have it repaired.

Some alleged errors in the charge of the court below are examined and held to have no merit.

THE plaintiff below, who was the administrator of the estate of Hugh M. Munro, sued in the District Court of the Fourth Judicial District of Minnesota to recover $25,000 damages for the killing of Munro on the 10th day of January, 1888, at or near a station known as Gray Cliff on the Northern Pacific Railway in the Territory of Montana. The complaint contained the following allegations:

" That on the said 10th day of January, 1888, the said Hugh M. Munro, now deceased, was in the employ of the said defendant corporation within the Territory of Montana in the capacity of locomotive engineer for hire and reward by the said defendant paid, and that the duty of running a locomotive engine upon said defendant's line of railway within said Territory was by said defendant assigned to said Hugh M. Munro on the said 10th day of January, 1888, and the defendant directed and ordered the said Hugh M. Munro to run a certain locomotive engine, the property of said defendant, known as engine No. 161, over and upon its said railway in said Territory; that prior to and at the time the said orders were so presented to said Munro there had been and then was a severe snow storm in progress, and defendant's line of railway over and upon which said Munro was so ordered to run said engine was covered with drifting snow theretofore accumulated thereon and then fast accumulating, notwithstanding which the said defendant corporation did wilfully, improperly, negligently, and carelessly refuse and neglect to send a snow-plow ahead of said engine No. 161 to clear the snow and ice from said defendant's said track which had accumulated and was accumulating thereon by reason of said storm, so as to render the passage of said engine No. 161 safe and proper.

" That there was attached to the forward part of said engine No. 161 a certain attachment known as a pilot-plow, an appliance constructed thereon for the purpose of clearing the railway of snow and ice accumulated thereon and render safe the passage of the engine to which said plow was attached over and upon said railway of defendant.

" That on the said 10th day of January, 1888, the said defendant corporation knowingly, wilfully, negligently, and carelessly allowed to be and remain upon said engine No. 161, attached thereto as aforesaid, a certain pilot-plow, the iron braces, bolts, and rods of which were broken, imperfect, and insufficient, by reason of which condition the said plow was loose and insufficiently secured to the pilot of said engine, allowing the said pilot to raise up and ride over obstructing

snow and ice instead of cutting through the same, as was the intention of its construction, rendering the running of said engine upon said railway dangerous, and that the said defendant well knew of the broken, defective, and dangerous condition of said engine No. 161 at the time the said Hugh M. Munro was so ordered to run the same upon and over said railway, notwithstanding which the said defendant corporation did negligently and carelessly furnish to said Hugh M. Munro said engine with the said broken and imperfect pilot-plow attached thereto to run over and upon its said line of railway.

"That while said Hugh M. Munro was running said engine in performance of his duty as such engineer and pursuant to the orders of said defendant corporation, and before daylight on said 10th day of January, 1888, near Gray Cliff, in said Territory of Montana, the said engine struck an accumulation of snow and ice which said defendant had carelessly and negligently allowed to accumulate upon its said railway track, and the pilot-plow of said engine, by reason of its broken, loose, and imperfect condition aforesaid, did ride upon said accumulation of snow and ice, thereby derailing said engine and throwing the same from said railway track, whereby the said Hugh M. Munro was instantly killed.

\*　　　　\*　　　　\*　　　　\*　　　　\*

"That the law of the Territory of Montana governing actions for recovery of damages for causing death was on the 10th day of January, 1888, and now is sections 13 and 14 of title II. of said chapter 1 of the first division of Code of Civil Procedure of the Territory of Montana; which said sections of said law of said Territory are in the words and figures following, viz.:

"'SECTION 13. A father, or, in case of his death or desertion of his family, the mother, may maintain an action for the injury or death of a child, or a guardian for the injury or death of his ward.

"'SECTION 14. Where the death of a person not being a minor is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for

damages against the person causing the death, or if such person be employed by another person who is responsible for his action, then also against such other person. In every action under this and the preceding section such damages may be given as under all the circumstances of the case may be just.'"

The case was removed to the Circuit Court of the United States for the District of Minnesota, where an answer was filed by the defendant, denying the averments of the complaint, and alleging that the death of Munro was caused solely by his negligence and carelessness, and not by the negligence of the defendant or any of its servants or employés.

There was a verdict and judgment below in favor of the plaintiff for $10,000. To review that judgment this writ of error was sued out. The errors assigned were as follows:

"First. The court erred in charging the jury as follows: 'Did it fail to discharge any duty which the law imposed upon it for the safety of its employé, the plaintiff's intestate? If it did, and if such negligence was the cause of the death of the engineer, Munro, then the plaintiff is entitled to recover.'

"Second. The court erred further in charging the jury as follows: 'The charge in this complaint is that this death was caused by the derailment of the engine, which took place because the plow was out ᵣᶠ repair as described, or, at least, that the defendant had not used reasonable care in clearing its track, and that when the engineer in that condition arrived at this cut, two miles from Gray Cliff, the snow had accumulated to such an extent that the engine was thereby derailed, and that it was this negligence which caused the death.'

"Third. The court erred further in charging the jury as follows: 'Many States have different laws. The law in this State until recently was that only $5000 could be given in a case of death. It has lately been increased to $10,000.'

"Fourth. The court erred further in charging the jury as follows: 'If you believe from all the evidence in the case that the plaintiff is entitled to recover, then it is for you to determine what compensation you will give for the death of the plaintiff's intestate. The law of Montana limits it to such an amount as you think it would be proper under al' circum-

stances of the case, and that is the law which will govern in this case.'

"Fifth. The court erred further in refusing to give to the jury the following request tendered by defendant's counsel: 'You, the jury, are instructed to find a verdict for the defendant.'

"Sixth. The court erred further in refusing to give to the jury the following request tendered by defendant's counsel: 'The laws of Minnesota limit the amount of damages to be recovered in this case to five thousand dollars.'

"Seventh. The court erred further in refusing to give to the jury the following request tendered by defendant's counsel: 'The court instructs the jury that unless they find that it was customary for defendant company to send a snow-plow in advance of the trains running east from Livingston during storms of this character, and that unless, further, the accident occurred by reason of the negligent and careless failure of the defendant to send such snow-plow in advance, they will find for the defendant.'

"Eighth. The court erred further in refusing to give to the jury the following request tendered by defendant's counsel: 'The court instructs the jury that, unless they find that the defendant carelessly and negligently furnished to the deceased engineer a plow attached to his engine, the iron bolts and rods of which were broken, imperfect, and insufficient, and that by reason of which condition the said plow was loose and insufficiently secured to the pilot of said engine, and that when the said engine struck the snow at the cut, as testified to, the pilot plow of said engine, by reason of its said broken, loose, and imperfect condition, did ride upon the accumulated snow and ice at said cut, and that thereby the said engine was thrown upon the track, the jury will find for the defendant.'"

*Mr. James McNaught, Mr. A. H. Garland,* and *Mr. H. J. May* for plaintiff in error.

The issue the defendant was obliged to meet in the case at

bar under the pleadings was, that the defendant had negligently furnished the plaintiff with an engine with a defective "pilot-plow," and that this defect in the pilot-plow was rendered dangerous by failure of defendant to keep its track clear from snow and ice. It was not contended by plaintiff either that the defective pilot-plow could have occasioned the accident except in conjunction with the accumulation of snow and ice, or the accumulation of snow and ice on the track could have occasioned it except in conjunction with the defective pilot-plow. They were inseparably joined both in the complaint and in the evidence.

The evidence shows clearly that Munro had full knowledge of the storm, of the general condition of the track, and that his means of knowing of the necessity of sending a snow-plow ahead of his train were as full and complete as the defendant's. He had been on this particular run for a number of years, he was a capable engineer, familiar with the country, and he knew that no snow-plow had been sent ahead of his train. It is an established rule on this subject that a servant who has a reasonable opportunity to inform himself of defects, is presumed, by remaining in the company's employ to have assumed the risk of them. Pierce on Railroads, 379; Thompson on Negligence, 1008.

Upon the pleadings and upon the evidence, or upon either or both, the question of negligence on the part of the company in not sending a snow-plough in advance of the train or in allowing the snow and ice to accumulate upon its track should be eliminated from the case as an independent factor upon which plaintiff could recover.

So it is insisted that the law upon the facts of this case is decidedly with the road, without going over distinctly and separately the different errors specified in the record, and the court should have directed the jury to find for the road as requested by it. The case when examined in the light of the authorities, is sufficiently discussed upon its merits, and there is left but one more proposition to place before the court.

The trial court erred in refusing to instruct the jury, as

asked by the road, "that the laws of Minnesota limit the amount of damages to be recovered in this case to $5000." Instead of that the court told the jury the recovery should be estimated under the laws of Montana, where Munro was killed.

It seems this action could have been brought in either Montana or Minnesota. The party had his selection as to the forum; that being so, it is but right and proper he should have only the remedy afforded by the law of the forum of his selection. Wharton, Conflict of Law, §§ 479, 747–754; Gould's Pleading, 104–112, 131, *et seq.;* Story, Conflict of Law, §§ 556, *et seq.; Nonce* v. *Richmond & Danville Railroad,* 33 Fed. Rep. 429.

If the party can take advantage of a remedy afforded in Minnesota, he must certainly take that remedy with the burdens ordinarily attached to it in that State. *Mostyn* v. *Fabrigas,* 1 Smith's Ldg. Cas. 340, and Eng. and Am. notes.

*Mr. Reuben C. Benton* and *Mr. Frank Healy* for defendant in error.

Mr. Justice White, after stating the case, delivered the opinion of the court.

For convenience, we shall consider the various assignments of error without regard to their numerical order.

The third, fourth, and sixth assignments involve the same question, and may be decided upon together.

The plaintiff's intestate was an engineer in the employ of the defendant corporation in the Territory of Montana, and the accident by which he lost his life occurred there. The law of the Territory of Montana at the time provided as follows:

"Where the death of a person not being a minor is caused by the wrongful act or neglect of another his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his action, then also

against such other person. In every action under this and the preceding section such damages may be given as under all the circumstances of the case may be just." (Section 14, title II, chapter I, first division of the Code of Civil Procedure of the Territory of Montana.)

Under the law of Minnesota, when the death occurred, the limit of recovery in case of death was $5000, but at the time of the trial of the case in the court below this limit had been increased to $10,000 by amendment of the Minnesota statutes.

The question which those assignments of errors present is, was the amount of damage to be controlled by the law of the place of employment and where the accident occurred, or by the law of the forum in which the suit was pending? In the case of *Herrick* v. *Minneapolis & St. Louis Railway Company*, reported in 31 Minnesota, 11, which involved the question of whether the courts of Minnesota would enforce and apply to a suit in that State for a cause of action originating in Iowa a law of the State of Iowa making railroad corporations liable for damages sustained by its employés in consequence of the neglect of fellow-servants, the court said:

"The statute of another State has, of course, no extra-territorial force, but rights acquired under it will always, in comity, be enforced, if not against the public policy of the laws of the former. In such cases the law of the place where the right was acquired, or the liability was incurred, will govern as to the *right of action;* while all that pertains merely to the *remedy* will be controlled by the law of the State where the action is brought. And we think the principle is the same, whether the right of action be *ex contractu* or *ex delicto.*

"The defendant admits the general rule to be as thus stated, but contends that as to statutory actions like the present, it is subject to the qualification that, to sustain the action, the law of the forum and the law of the place where the right of action accrued must concur in holding that the act done gives a right of action. We admit that some text-writers — notably, Rorer on Interstate Law — seem to lay

down this rule, but the authorities cited generally fail to sustain it.

\*       \*       \*       \*       \*

"But it by no means follows that, because the statute of one State differs from the law of another State, therefore it would be held contrary to the policy of the laws of the latter State. Every day our courts are enforcing rights under foreign contracts where the *lex loci contractus* and the *lex fori* are altogether different, and yet we construe these contracts and enforce rights under them according to their force and effect under the laws of the State where made. To justify a court in refusing to enforce a right of action which accrued under the law of another State, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that, for some other such reason, the enforcement of it would be prejudicial to the general interests of our own citizens. If the State of Iowa sees fit to impose this obligation upon those operating railroads within her bounds, and to make it a condition of the employment of those who enter their service, we see nothing in such a law repugnant either to good morals or natural justice, or prejudicial to the interests of our own citizens."

This opinion of the Supreme Court of Minnesota is in accord with the rule announced by Chief Justice Marshall in *The Antelope*, 10 Wheat. 66. In referring to that case in *Texas & Pacific Railway* v. *Cox*, 145 U. S. 593, the court said: "The courts of no country execute the penal laws of another. But we have held that that rule cannot be invoked as applied to a statute of this kind, which merely authorizes a civil action to recover damages for a civil injury." The rule thus enunciated had been adopted in previous cases, and has since been approved by this court. *Smith* v. *Condry*, 1 How. 28; *The China*, 7 Wall. 53, 64; *Dennick* v. *Railroad Co.*, 103 U. S. 11; *The Scotland*, 105 U. S. 24, 29; *Huntington* v. *Attrill*, 146 U. S. 657, 670. Indeed, in *Texas & Pacific Railway Co.* v. *Cox, supra*, Mr. Chief Justice Fuller, speaking for the court, said: "The question, however, is one of general law, and we regard it as settled in *Dennick* v. *Railroad Co.*"

The contract of employment was made in Montana, and the accident occurred in that State, while the suit was brought in Minnesota. We think there was no error in holding that the right to recover was governed by the *lex loci*, and not by the *lex fori*.

The fifth error assigned is the refusal to instruct the jury to find a verdict for the defendant.

The evidence tended to show that Munro was an engineer in the employ of the railroad company at the town of Livingston; that, as such engineer, he was driving engine No. 161 some time in the latter part of December; that whilst driving the engine he discovered that an appliance known as the "pilot-plow," which was attached to the engine, was out of order, and in a dangerous condition. The purpose of such a plow is to push the snow from the track, and if not properly braced, as stated by one of the witnesses, it is likely to "rise up and ride over the drift, instead of going through it, and the natural result would be to throw the engine trucks from the tracks." After Munro discovered that the plow was defective, he called the attention of the foreman of the shop and master mechanic to its condition. On or about the 2d day of January, Munro was taken sick and did not pursue his occupation until January 9, when he reported for duty. At about twelve o'clock that night, while a severe snow storm was raging, Munro was sent for, by messenger, to take out a passenger train. The train was delayed in getting away from Livingston, and left that place about two o'clock in the morning drawn by engine No. 161, with Munro in charge as engineer. At a place called Gray Cliff the engine, in passing through a cut, capsized, and Munro was killed.

There was no conflict of evidence as to the fact that the plow was defective some two weeks before the accident, when Munro so stated to the foreman and master mechanic, but there was a conflict upon the question whether or not it had been subsequently repaired. Testimony was adduced by the plaintiff tending to show that the necessary repairs had not been made, and that at midnight on the 9th, when the engineer was called upon to take charge of the engine, the con-

dition of the plow was quite as defective as it had been some two weeks before, when the engineer had made his report of its condition to the foreman. On the other hand, the defendant offered testimony which tended to show that the repairs had been made. It was proven that, at the time Munro was called upon to take charge of the engine, on the night of the 9th, the round-house was so full of steam that the engine could not have been critically examined by him. The presence of this steam was due to the fact that there was no heating apparatus in the round-house, and, therefore, steam was allowed to escape therein, in order to prevent the engines from freezing. There was some evidence that the effect of the defective pilot-plow would be to throw the train from the track whenever the engine struck an accumulation of snow which had been in any way impacted, the resistance of the snow having the effect of pushing the defective plow up and thus derailing the engine. On the other hand, there was other evidence that such a result could not have followed from the defect in the plow.

Under this condition of proof it is clear that the instruction was rightfully refused. The obligation of the employer to furnish to his employé sound implements is established. *Hough* v. *Railway Co.*, 100 U. S. 213, 218 ; *Union Pacific Railway Co.* v. *Daniels*, 152 U. S. 684. And the fact that the engineer, when called upon at midnight on the 9th to perform duty, took the engine out under the conditions surrounding it in the round-house, implies no assumption by him of the risk of defective machinery. The proof showed, or tended to show, that notification by the engineer to the foreman and master mechanic of the existence of the defect was given some ten or twelve days before the accident, and that at the time there was an impression created in Munro's mind that it was to be remedied. It also shows that work of this character was usually done in the shops at Livingston, over which the foreman presided and in which the engine lay when the notice was given. From the time of the notice up to the time when the engineer was called upon to use the engine he was not on duty, but was absent on sick leave. As the employé had

given notice of the defect to the proper officer whose duty it was to make the repairs, and the impression had been conveyed to him that these would be made, he had a right to assume that they had been made, and to act upon that assumption. The mere fact of his taking the engine out at midnight under the circumstances did not of itself, unsupported by other proof, imply an assumption by him of the risk resulting from the dangerous and defective condition of the attachment to the engine. *Hough* v. *Railway Co.*, 100 U. S. 225.

The first assignment of error is, we think, without merit. The language of the charge complained of is: "Did it [the defendant company] fail to discharge any duty which the law imposed upon it for the safety of its employé, the plaintiff's intestate? If it did, and if such negligence was the cause of the death of the engineer, Munro, then the plaintiff is entitled to recover." Separated from the context this general language might have misled, but when considered in proper connection with the rest of the instruction given, it could not have done so.

The eighth error assigned was to a refusal of the court to give the following charge: "The court instructs the jury that unless they find that the defendant carelessly and negligently furnished to the deceased engineer a plow attached to his engine, the iron bolts and rods of which were broken, imperfect, and insufficient, and that by reason of which condition the said plow was loose and insufficiently secured to the pilot of said engine, and that when the said engine struck the snow at the cut, as testified to, the pilot-plow of said engine, by reason of its said broken, loose, and imperfect condition, did ride upon the accumulated snow and ice at said cut, and that thereby the said engine was thrown from the track, the jury will find for the defendant." The charge which the court gave was substantially as requested, and correctly stated the law. It was as follows: "The court instructs you that unless you find that the defendant negligently and carelessly furnished to the deceased engineer a plow attached to his engine, the iron bolts and rods of which were broken, imper-

fect, and insufficient, and by reason of said imperfect condition, when the engine struck the snow at the cut, as testified to, the engine and tender were derailed by reason thereof, which caused the accident in question, then the defendant would be entitled to a verdict. The claim is that the snow had accumulated to such an extent in that cut that when the engine struck it, the plow being in that condition in which it was, it was unable to clear the track, the accumulation of snow being so great, and that, as described by some witnesses, it rode up and threw the engine off the track from the fact that the front trucks of the engine could not ride over it. I instruct you that unless the cause of this derailment and the throwing over the engine was the imperfect condition of this plow, that it could not clear the cut from the snow which had accumulated there, but the engine was thrown over and thereby death ensued — unless this is found to be true to the satisfaction of the jury, the defendant would be entitled to a verdict." We can see no material variance between the charge requested and the charge which was given.

The seventh error assigned is to the refusal of the court to instruct the jury "that unless they find that it was customary for defendant company to send a snow-plow in advance of the trains running east from Livingston during storms of this character, and that unless, further, the accident occurred by reason of the negligent and careless failure of the defendant to send such snow-plow in advance, they will find for the defendant." This instruction was, of course, justly refused, because it implied that the defendant was entitled to a verdict, if, contrary to its custom, it had not sent a snow-plow in advance of the train, without reference to the defective condition of the pilot-plow, which was the cause of action upon which the plaintiff relied. Indeed, although the petition charged negligence on the part of the defendant in failing to send a snow-plow ahead of the train, the action, as stated in the complaint, was predicated upon the defect in the machinery, or pilot-plow — the failure to send the snow-plow being alleged as a mere incident, or remote cause of damage. And this distinction was elucidated

with great clearness in the charge of the court. It nowhere indicated that there could be any liability on the part of the defendant arising from the failure to send a snow-plow ahead of the train, as a distinct and substantive cause of action. It referred to the failure to send a snow-plow ahead of the train merely as the reason why it was necessary to have the pilot-plow attached to the engine. The court said : " The charge in this complaint is that this death was caused by the derailment of the engine, which took place because the plow was out of repair as described, or at least that the defendant had not used reasonable care in clearing its tracks, and that when the engineer with the engine in that condition arrived at this cut, two miles from Gray Cliff, the snow had accumulated to such an extent that the engine was thereby derailed, and that it was this negligence on the part of the defendant that caused the death." In other words, throughout the whole charge, the court instructed the jury that the liability, if any, must result from the defective condition of the machinery or pilot-plow of the engine ; and where it referred to the failure to send a snow-plow ahead of the train as an act of negligence, treated it as negligence giving rise only remotely, and not proximately, to the injury ; the proximate cause being the defective machinery, and the remote accumulation of snow, which rendered the use of the engine unsafe because of the defect in the pilot-plow attached thereto.

*Judgment affirmed.*

MR. JUSTICE JACKSON, not having heard the argument, took no part in the decision of this cause.