### MISSOURI PAC. RY. CO. v. LARUSSI.

(Circuit Court of Appeals, Seventh Circuit. February 7, 1908. Rehearing Denied May 6, 1908.)

#### No. 1,420.

1. DEATH—STATUTORY RIGHT OF ACTION FOR WRONGFUL DEATH—ENFORCEMENT IN FEDERAL COURTS.

A right of action for wrongful death, accrued under a statute of one state, may be enforced in a federal court in another having jurisdiction of the parties, at least where such statute is not contrary to the public policy of the state in which the action is brought, without regard to any special rule or statute of such state either authorizing or inhibiting actions in the local courts on causes arising elsewhere.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 50.]

2. EXECUTORS AND ADMINISTRATORS—JURISDICTION TO APPOINT—DOMICILE OF DECEDENT.

A probate court, in appointing an administrator, is presumed to have been acting within its jurisdiction; and such presumption is not overcome by the fact that the decedent, shown to have resided in the state and county where the appointment was made for several years, was at the time of his death engaged on construction work on a railroad in another state, where he boarded and lodged during such work, or that an administrator was there appointed after his death.

3. MASTER AND SERVANT—INJURY TO SERVANT—PROOF OF NEGLIGENCE—EFFECT OF KANSAS EMPLOYER'S LIABILITY ACT.

Under the Kansas employer's liability act (Gen. St. Kan. 1889, § 1251), which as construed by the Supreme Court of the state relieves railroad employés, more or less exposed by their employment to the hazards of railroading, from the common-law rule of assumed risk from negligence of fellow servants, such an employé, injured or killed in a collision between trains while being carried by the company to or from his place of work as required under his contract of employment, stands in the same relation to the company as a passenger, and the happening of the collision is prima facie evidence of the company's negligence, and casts upon it the burden of proof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 144–152, 894–906.]

4. DEATH—CONDITION PRECEDENT TO ACTION—NOTICE OF CLAIM.

The amendment of the Kansas employer's liability act, adopted in 1903, which provides that notice in writing of an injury sustained, "stating the time and place thereof, shall have been given by or on behalf of the person injured to such railroad company within 90 days after the occurrence of the accident," does not require that such notice should have been given by an administrator, suing for an injury which caused the death of his intestate, as a condition precedent to such action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 13.]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

For lower court opinions, see 155 Fed. 654.

The defendant in error, as administrator of the estate of Minanzio Arquilli, deceased, recovered judgment in suit against Missouri Pacific Railway Company, plaintiff in error, for damages for alleged negligence in causing the death of the intestate, and this writ of error is brought by the railway company to reverse such judgment. The injury and death occurred April 26, 1903, in Kansas, where the right of action, when death is so caused, was conferred by statute (paragraph 4518, Gen. St. Kan.; Taylor's 1889 Ed., c. 80, § 422), in conformity with the provisions of the so-called "Lord Campbell's Act"; and the suit was commenced in the United States Circuit Court for the Northern District of Illinois, upon averments of the citizenship therein of the defendant in error and his appointment by the probate court of Cook county, Ill., having jurisdiction thereof, as administrator of the estate of the deceased, and that the plaintiff in error was a Missouri corporation and citizen. The intestate, Arquilli, came to Chicago from Italy, about six years prior to his death, with his elder son, leaving his wife and four children in Italy, and making frequent remittances from Chicago, out of his earnings as a laborer, for support of his family. At the time of his death Arquilli was employed by the plaintiff in error as a laborer on trackwork in Kansas, and it is stipulated of record that he "was working, boarding, and lodging in Wilson county," where "some of his wearing apparel and ornaments of the person and earned and unpaid wages, not over $50, were kept, all of which were taken possession of by W. H. Lake, administrator appointed by the county court of Wilson county, Kansas." The deceased, with about 40 other laborers, was in a caboose on a work train which was carrying them, as arranged by the railway company from their place of work, at the close of the day, to their lodging place, running with the cars in front of the engine and the caboose at the head of the train. An engine hauling a freight train, running upon the single track in the opposite direction, struck and wrecked this caboose and killed Arquilli. The testimony as to the circumstances of the collision is that furnished on behalf of the plaintiff below in meager statement of the fact as above mentioned, with various estimates of the speed of both approaching trains and mention of the further fact that the engine of the freight train passed over the wreckage of the caboose. No testimony was offered on the part of the defendant below, by way of explanation or traverse. On an issue raised by the defendant below, by special plea, that Arquilli was a resident of Kansas, and not of Illinois, at the time of his death, the court instructed the jury to find against such plea: and thereupon the issue of liability under the evidence was submitted, and the jury returned a verdict in favor of the plaintiff, with damages assessed at $2,500.

Frank F. Reed, for plaintiff in error.

James Rosenthal, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge. The record in this case is comparatively brief, except in the assignment of errors, 51 in number. In the oral argument, however, all contentions for reversal were fairly embraced under four propositions, and reference to the various assignments in detail is not needful. We have considered all the questions raised, but confine the discussion to those advanced in the argument—with the third and fourth propositions grouped together—namely: (1) That the "action should have been dismissed because contrary to the public policy" of Illinois; (2) that it was error to instruct the jury to find in favor of the plaintiff upon the question (raised by

plea) of the intestate's residence; . (3) that "no negligence of the defendant was established," either under the general rule applicable to such case of master and servant, or "within the terms of the Kansas fellow servant act."

1. The plaintiff recovered judgment for damages arising out of the injury and death of the intestate, in Kansas, caused by alleged negligence of the defendant in its operation of trains; and it is conceded, not only that the Kansas statute provided (in conformity with the Lord Campbell act) for recovery thereupon, but that like provision then existed in Illinois, as the law of the forum. Thus the alleged cause of action rests on the Kansas statute, and its creation thereunder is unquestionable, if the proof establishes actionable negligence. Objection is raised to its enforcement in the federal court, sitting in Illinois, upon the ground that the analogous statutory provision in Illinois above referred to (section 1, c. 70, 1 Starr & C. Ann. St. 1896; section 1, c. 70, Hurd's Rev. St. 1905) was qualified by an amendment of the succeeding section (section 2) in 1903—after the date of the injury and death in question—whereby the amount of damages recoverable was increased, and a proviso inserted "that no action shall be brought or prosecuted in this state to recover damages for a death occurring outside the state." Hurd's Rev. St. 1905, c. 70, § 2. The contention is, in substance, that this proviso amounts to departure from the original statutory policy of the state, so that the provisions for the cause of action, in Kansas and Illinois, respectively, are inconsistent or nonconcurrent, and that such cause of action arising in the one state is not enforceable in the other, even in the federal court—citing Texas & Pacific Railway Co. v. Cox, 145 U. S. 593, 604, 605, 12 Sup. Ct. 905, 36 L. Ed. 829; Northern Pacific R. R. v. Babcock, 154 U. S. 190, 198, 14 Sup. Ct. 978, 38 L. Ed. 958; Stewart v. Baltimore & Ohio R. R. Co., 168 U. S. 445, 448, 18 Sup. Ct. 105, 42 L. Ed. 537.

The amendment referred to is without force in the case at bar, as we believe, irrespective of the question whether its terms authorize the interpretation sought, to bar suit upon a pre-existing cause of action. The general doctrine is established, as applicable as well to this statutory cause of action, that a liability is enforceable in the federal forum, having jurisdiction of subject-matter and parties, whenever "a right of action has become fixed and a legal liability incurred," either under the common law or under a state statute not penal in its nature. Dennick v. Railroad Co., 103 U. S. 11, 18, 26 L. Ed. 439; 10 Notes U. S. Rep. 8; Huntington v. Attrill, 146 U. S. 657, 674, 13 Sup. Ct. 224, 36 L. Ed. 1123. As stated both in the Cox and the Babcock Cases, supra, cited by the plaintiff in error, this rule is one of general law and regarded as settled by the Dennick Case. Upon the death of the intestate, if caused as averred, the right of action accrued under the Kansas statute, and its enforcement in the trial court, in a suit there instituted, appears to be authorized under the above-mentioned doctrine, subject only to the jurisdictional requirements.

Whether such enforcement may be subjected to the further test mentioned in Texas & Pacific Railway Co. v. Cox, 145 U. S. 593,

605, 12 Sup. Ct. 905, 908, 36 L. Ed. 829—namely, that "the statute of the state in which the cause of action arose is not in substance inconsistent with the statutes or public policy of the state in which the right of action is sought to be enforced"—is a question not involved here for solution, as the terms of the statute in Illinois creating the cause of action are substantially identical with those of the Kansas statute. Both provide alike to remove the common-law bar and establish a cause of action for a tort (committed in the state) which causes death. The right of recovery in the case at bar rests alone on the statute of Kansas—is "governed by the lex loci, and not by the lex fori." Northern Pacific Railroad v. Babcock, 154 U. S. 190, 199, 14 Sup. Ct. 978, 981, 38 L. Ed. 958. As the law of Illinois concurs in this policy in creating the cause of action, the test referred to is met, if applicable; and whether the remedial provisions in Kansas and Illinois are alike or unlike is immaterial under either view. Stewart v. Baltimore & Ohio R. R. Co., 168 U. S. 445, 448, 18 Sup. Ct. 105, 42 L. Ed. 537. Assuming, therefore, that jurisdiction of the parties was acquired, cognizance in the trial court of the subject-matter was governed by the federal law, with rights to be administered in conformity with the rule of general jurisprudence as above stated, unaffected by any special rule or statute of Illinois, either authorizing or inhibiting suit in the local courts upon such causes of action arising outside the state, except such statute of limitation as may be applicable thereto. So the proviso incorporated in section 2 of the Illinois statute, in reference to a foreign cause of action, which leaves unmodified the rule and policy of the Lord Campbell act adopted in section 1, is inapplicable to the case at bar, as we believe, whether this concurrence with the Kansas statute in creating like cause of action is needful or immaterial. Nor is it necessary to ascertain whether a like rule prevails in Kansas and Illinois as to enforcement of foreign rights of action.

2. The plaintiff below was both a citizen of Illinois and administrator of the estate of the deceased under adjudication and appointment in the probate court of Cook county, Ill.; and his authority to sue is challenged by pleas averring that the deceased was not "a resident of or domiciled in the state of Illinois" and had no property or effects therein, and that he was a resident of Kansas at the time of his death, and an administrator of his estate had been appointed and qualified in Kansas on May 25, 1903. Support for this plea rests alone on the stipulated facts that Arquilli (deceased) was employed in trackwork, "was working, boarding, and lodging in Wilson county," where "some of his wearing apparel" and earnings were kept, and such belongings came into the possession of an administrator appointed in Kansas. It is undisputed, however, that he was theretofore living and working in Chicago for a considerable period, and made remittances from there to his wife in Italy; and his transfer to and presence in Kansas is fairly attributable to the engagement there as railroad laborer merely for the time being. The adjudication of the probate court of Cook county is presumptive of the existence of one or the other of the statutory grounds therefor, with either of which the Kansas facts relied upon are in no wise incon-

sistent, so that no evidence appears for impeachment of such proceedings in the probate court. We are of opinion that the trial court committed no error in its instruction to the jury accordingly.

3. The objection that actionable negligence was not established as the cause of death is urged under these contentions: (a) That the doctrine "res ipsa loquitur" is not applicable, because the intestate was not riding on the train in the relation of passenger, but as a servant of the company; (b) that the "Kansas fellow servant act" is not applicable to such case; and (c) that the plaintiff is not entitled to the benefits of such act, in any view, for want of notice of the injury, as required by an amendment in 1903.

The first-mentioned contention is untenable, as we believe, in the view in which it is pressed in the argument, namely, that the carrier is not liable for an injury to the servant thus riding to or from his work, without proof of negligence on the part of the carrier other than the mere fact of the collision of trains, although it be assumed that the statute of Kansas imposes liability for the negligence of fellow servants. Under the common-law rule of liability, the distinction is well settled by the authorities between the case of a passenger and that of a servant on the train, in the proof required to charge such liability for injury arising from collision or other accident, and that "the fact of an accident carries with it a presumption of negligence on the part of the carrier," in favor of the injured passenger, while no such presumption is raised in favor of the injured employé, who must prove affirmatively that the employer was negligent. This rule is distinctly recognized and stated as resting, in the one instance upon the breach of the contract to carry the passenger safely, and in the other upon the relation of master and servant, with its assumption by the latter of risk for negligence of fellow servants, the frequent cause of such happenings; hence the burden cast on the employé to prove negligence for which the master is chargeable in such case. Patton v. Texas & Pacific Railway Co., 179 U. S. 658, 663, 21 Sup. Ct. 275, 45 L. Ed. 361, and cases cited. Whether such rule of distinction is applicable to the case of an employé (as in the present instance), injured or killed by collision of trains, during his conveyance by the employer, pursuant to contract, from his place of work to a lodging place, in the absence of controlling statutory provisions, is a question not free from difficulty, in the light of the various authorities, but its solution is not deemed needful, in view of our conclusions upon the effect of the Kansas statutes referred to. If the employé thus in course of such conveyance under agreement with his employer, a common carrier, is relieved by the statute from the common-law rule of assumed risk for negligence of fellow servants in such service, no ground exists for the above-mentioned distinction, under that rule, between the obligation of the carrier to the employé thus carried and its obligation to the passenger under his contract for transportation. As stated in the early and leading case of Stokes v. Saltonstall, 13 Pet. (U. S.) 181, 191, 10 L. Ed. 115, and frequently approved (3 Notes U. S. Rep. 810), the undertaking for carriage is "that so far as human care and foresight can go he will transport them safely." The prima facie breach arising from the accident is

alike in both cases, and thus "the happening of an injurious accident" (as in a passenger case, Gleeson v. Virginia Midland R. Co., 140 U. S. 435, 443, 11 Sup. Ct. 859, 35 L. Ed. 458), is "prima facie evidencê of negligence on the part of the carrier," and casts the burden of proof upon the carrier "to show that its whole duty was performed."

We are satisfied, therefore, that proof of the collision unexplained authorizes recovery for the death of an employé so riding on the train, unless the Kansas statute is without force under the circumstances. The statute known as the "Employer's Liability Act," adopted in Kansas in 1874 (section 1, c. 93, p. 143, Laws 1874; paragraph 1251, Taylor's 1889 Compilation of General Statutes), reads as follows:

"Every railroad company organized or doing business in this state shall be liable for all damages done to any employé of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employés to any person sustaining such damage."

This provision was upheld and construed, in Missouri Pac. Ry. Co. v. Haley, 25 Kan. 35, 53, to embrace "only those persons more or less exposed to the hazards of the business of railroading"; and it is plain that the employé in question was within such definition of service and exposure. The contention that he was not entitled to its benefits, because not engaged in the operation of the train, is without merit, under the denial of such distinction in Union Pac. Ry. Co. v. Harris, 33 Kan. 416, 418, 6 Pac. 571, and in subsequent decisions reviewed in Missouri, K. & T. Ry. Co. v. Medaris, 60 Kan. 151, 55 Pac. 875. While the last-mentioned decision is cited in support of the contention, it is applicable only for its recognition of the rule as above stated. Both facts and ruling are clearly distinguished in the opinion from the circumstances of the present case. In reference to the Iowa cases, cited as supporting the contention, it is sufficient to remark, as stated in Union Pac. Ry. Co. v. Harris, supra, that the statute construed in these recent decisions is materially changed from its original provision, adopted in Kansas, and the rulings thereunder furnish no aid for the construction sought here of the Kansas statute. We are impressed with no view which excludes the employé in question from the benefits of the act, either under its terms or in any interpretation by the Supreme Court of Kansas brought to our attention.

The remaining objection raised against such benefit is predicated on an amendment of this employer's liability act, adopted in 1903 (Laws 1903, p. 599, c. 393), in a proviso as follows:

"That notice in writing of the injury so sustained, stating the time and place thereof, shall have been given by or on behalf of the person injured to such railroad company within ninety days after the occurrence of the accident."

This proviso was adopted in March, to go into effect July 1, 1903, while the injury and death in question occurred April 26, 1903. Whether it would require notice to be given by a person injured prior to the date so fixed for the amendment to become operative needs no determination in the present case, under our view of its terms as inapplicable to recovery by representatives for an injury causing death. As notice cannot be given "by or on behalf" of the de-

ceased, and the representatives entitled to recover damages are not "the person injured," it is obvious that no provision is expressly made for notice in such cases. The purpose of the requirement in cases of alleged injury is well recognized—that timely notice be given to enable the party charged with negligence to investigate the facts, of which he may not otherwise be fairly advised—and the just inference is that notice of injuries causing death was not within the reasonable purpose and requirement of the proviso, and thus excluded from its terms. In any view of the requirement, however, the statute must be strictly construed, as no notice is needful at common law, and we are of opinion that the trial court rightly overruled the objections thereunder.

The judgment of the Circuit Court appears to be well supported and free from reversible error, and is affirmed.