Lewis W. KNECHT, Administrator of the Estate of William J. Knecht, Deceased,

v.

UNITED STATES.

Civ. A. No. 16156.

United States District Court
E. D. Pennsylvania.

Sept. 14, 1956.

Albert S. Fein, Philadelphia, Pa., for plaintiff.

W. Wilson White, U. S. Atty., Arthur R. Littleton, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

CLARY, District Judge.

This is an action brought by the plaintiff, Lewis W. Knecht, Administrator of the Estate of William J. Knecht, deceased, against the United States to recover damages for the wrongful death of William J. Knecht, a member of the United States Air Force. Suit was instituted pursuant to the provisions of the Federal Tort Claims Act of 1948, as amended, 28 U.S.C.A. § 1346(b). The case was tried to the Court, sitting without a jury, on May 8, 1956. Plaintiff has submitted Requested Findings of Fact Nos. 1 to 20, inclusive, in which Requests the United States has joined. These Requests detail the facts of the

case and the Court adopts as its Findings of Fact the aforesaid Requested Findings of Fact Nos. 1 to 20, inclusive. Briefly summarized the facts are as follows:

William J. Knecht, Airman 3rd Class, 23 years of age, with a reasonable life expectancy of 43.88 years, on duty with the 5010th Installations Squadron, Eielson Air Force Base, Alaska, on October 18, 1953, was issued an official pass which allowed him to be absent from the said Air Force Base from 1700 hours on October 18, 1953, to 0800 hours on October 19, 1953 (5 P.M. of October 18, 1953 to 8 A.M. of October 19, 1953). After 5 P.M. of October 18, 1953, Knecht left the Base, in company with a fellow airman James J. O'Donnell, using as means of transportation a 1950 Chevrolet Sedan privately owned by Airman O'Donnell. On October 19, 1953, at or about 3:15 A.M., with O'Donnell driving and Knecht as a passenger, both dressed in civilian clothes, the Chevrolet was traveling in a southerly direction on the Richardson Highway, a road leading from Fairbanks, Alaska, to Eielson Air Force Base. The Chevrolet had reached a point some seven miles from the Base when it collided with a five ton truck and trailer, owned and operated by the United States Government. The Government was moving a Quonset Hut along the Richardson Highway which at that point was 22 feet in width with a gravel shoulder on each side of 2½ feet. The highway has a yellow line running down the center of the black top dividing it into two 11 foot lanes. The Quonset Hut, centered on the truck-trailer, was being transported from Eielson Air Force Base to Ladd Air Force Base. The truck was traveling north on the Richardson Highway toward Fairbanks. The Quonset Hut, 15 feet wide and 40 feet long, extended well into the southbound lane and carried no clearance lights, red flares or flags, as required by the law of Alaska. In addition, the truck-trailer carrying the Quonset Hut had defective headlights in that the low beam was not working and the high beam was so adjusted as to throw a

dazzling glare of light into the eyes of an oncoming driver which prevented him from seeing any of the tow. The laws of Alaska also require that in a movement of this type a pilot car precede the movement equipped with warning devices and that a guard be put at the rear, plus adequate clearance lights on the bulky object. The pilot car in this case was a jeep equipped only with a white flashlight, the batteries of which were admittedly weak. Driving southward, in his own lane, Airman O'Donnell struck the overhang of the Quonset Hut shearing off the entire top of the Chevrolet which traveled under the building nearly its entire length, killing both airmen instantly.

■ The facts set forth above clearly indicate gross negligence on the part of the Government in its manner of transporting the Quonset Hut along the highway. Under the circumstances, Airman Knecht, as a passenger in the Chevrolet, is exonerated of any contributory negligence. The primary cause of the accident and the subsequent death of Knecht was the gross negligence of the Government's employees.

The Government does not and has not seriously contended that it was not guilty of negligence; its defenses were in the alternative and on the following grounds. First, that the death of Knecht was "incident to his service" as a member of the Armed Forces and, therefore, plaintiff is not entitled to recover, or, in the event such defense was not valid, that under the law of Alaska the limit of recovery for wrongful death is $15,000 and that the Government, since it has paid some $4,000 to the widow and child of Knecht up to April 30, 1956, and must in any event pay for the benefit of the widow and child the minimum sum of $16,075, under the provisions of 38 U.S.C.A. § 700 et seq. and Veterans' Regulations No. 1(A), 38 U.S.C.A. Chapter 12A following section 745, it is entitled to a set off in that amount; further that if any verdict should be entered in this case against the United States, it should be entered subject to the Government's right of set off.

■ The fact that Congress chose to provide a uniform system of compensation for injury or death to military personnel does not per se eliminate recovery for a serviceman under the Federal Tort Claims Act. Brooks v. United States, 1949, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200, and Feres v. United States, 1950, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152. In the Brooks case, Brooks, a serviceman home on furlough, was riding in an automobile with his brother, also a serviceman, and his father, which car collided with a U. S. Army truck at an intersection of public highways near Fayetteville, N. C. Brooks was killed and his brother and father were seriously injured. In holding that all had a right to sue under the Federal Tort Claims Act, Mr. Justice Murphy said:

> "* * * we are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident incident to the Brooks' service, a wholly different case would be presented. We express no opinion as to it, * * *." [69 S.Ct. 920]

In the Feres case [71 S.Ct. 155], the court noted that "This is the 'wholly different case' reserved from our decision in Brooks v. United States". Feres, while on active duty and not on furlough, perished in a fire while sleeping in his barracks at an Army Base at Pine Camp, New York. Negligence was alleged in the Government's failure to maintain a fire watch. Holding that the suit could not be maintained, Mr. Justice Jackson said:

> "We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to [their] service."

In distinguishing the Feres case from the Brooks case, he states that the "vital

distinction" is that "The injury to Brooks did not arise out of or in the course of military duty."

Since the Brooks and Feres decisions a number of conflicting lower court decisions have appeared: See Brown v. United States, D.C.1951, 99 F.Supp. 685; Herring v. United States, D.C.1951, 98 F.Supp. 69; Barnes v. United States, D.C.1952, 103 F.Supp. 51; Pettis v. United States, D.C.1952, 108 F.Supp. 500; Snyder v. United States, D.C.1953, 118 F.Supp. 585; Zoula v. United States, 5 Cir., 1954, 217 F.2d 81 and Ritzman v. Trent, D.C.E.D.N.C.1954, 125 F.Supp. 664.

It is clear from a reading of the above cases that while all use the Brooks and Feres decisions as the bases for the results reached, the different courts stress varying phases of the two cases. Some stress the exact location of the plaintiff at the time of injury and others whether the serviceman was on pass, furlough or leave at the time of the injury. Some cases attempt to analyze the relationship of the Brooks and Feres cases and to determine to what extent Feres may have overruled Brooks. I consider the Brooks and Feres cases to be entirely consistent; in fact, they complement each other, for only when read together does the ruling of the Supreme Court on this point become clear.

In the recent case of Brown v. United States, 1954, 348 U.S. 110, 75 S.Ct. 141, 144, 99 L.Ed. 139, the court pointed out that the Brooks case had not been overruled and it stressed that the distinction in the two cases was "between injuries that did and injuries that did not arise out of or in the course of military duty."

In Rich v. United States, D.C., 144 F. Supp. 791, Chief Judge Kirkpatrick of this District pointed out that the determinative factor in each case must be: whether what the serviceman was doing at the time of the injury was, in the language of the Feres case, "in the course of activity incident to service". Rich, a patient in the military hospital at Fort Bragg, N. C., had been granted a convalescent furlough which was to become effective Monday, November 5. On November 3rd he left the hospital on a week-end pass. That evening, in company with a friend, he made a number of trips from camp to nearby Fayetteville. His companion was to meet his wife on a bus that arrived at Fayetteville at 2:00 A.M., November 4, and did so. They were all returning to camp when Rich was injured in an accident with an Army vehicle. Holding that Rich was entitled to maintain a suit under the Federal Tort Claims Act, Chief Judge Kirkpatrick noted that the record was silent as to whether or not Rich intended to remain at camp that evening, and stated:

> "He was, of course, in the general neighborhood of the camp, but, if one inquires what he was actually doing at the time, the answer would probably be that he was merely killing time until he could pick up his furlough and leave the camp on Monday morning. A different question might have been presented if he had been returning to camp at the end of his free time to report for duty * * *"

The Government emphasizes this statement of Judge Kirkpatrick and argues strenuously that it is entitled to judgment. I cannot agree with this contention.

[redacted] Knecht was away from the Base on a pass, his time was his own and his activities were not controlled by his military status. True he was returning to the Base and he was probably returning at that given time for the purpose of getting a few hours sleep before having to report for duty at 8 A.M. that morning. Any justification for holding that this activity was "in the course of activity incident to service" merely because "activity incident to service" was to follow at 8 A.M. would necessarily be based only upon the fallacy "post hoc, ergo propter hoc". I, therefore, conclude that the plaintiff is entitled to maintain this action.

The last and most difficult question to be decided is what amount, if any, plaintiff is entitled to recover. Alaska has a

Wrongful Death Statute, 3 C.L.A. § 61-7-3, as amended, Laws 1949, c. 89, which limits recovery to $15,000; Pennsylvania does not. The plaintiff contends that the $15,000 limitation is not applicable to this suit brought in the Eastern District of Pennsylvania. With this I cannot agree. The Federal Tort Claims Act provides that the United States shall be liable for death caused by the negligent act of a Government employee "in accordance with the law of the place where the act or omission occurred." It would appear, therefore, that Alaskan law applies for it is the place "where the act or omission occurred" in the words of the statute. However, I need not now determine as a question of statutory construction whether the phrase "in accordance with the law of the place where the act or omission occurred" refers to the fact of negligence or the measure of money damages—because, even if that phrase is construed most favorably to plaintiff, and I do not decide that it should be, there still remains the Conflict of Laws question as to whether Alaskan law or Pennsylvania law applies. Although this Court has jurisdiction, the amount of damages recoverable should not be any different than otherwise recoverable merely because venue lies in Pennsylvania. The measure of damages recoverable in a tort action is governed by the law of the place where the cause of action arose and not by the choice of the forum. 11 American Jurisprudence, § 185, and cases cited therein. See also Northern Pacific Ry. Co. v. Babcock, 1893, 154 U.S. 190, 14 S.Ct. 978, 38 L.Ed. 958, and Curtis v. Campbell, 3 Cir., 1935, 76 F.2d 84. While there is some division of authority as to whether or not a state which has a limitation on the amount of recovery should allow recovery in excess of that amount because a greater amount is allowed by the law of the place of the injury, there can be no doubt as to the limit of the amount recoverable where the place of the injury has the limitation and the forum in which suit is brought does not. Goodrich on Conflicts, Third Edition, § 91. Applying the lex loci, plaintiff herein is limited to $15,000 recovery.

■ Under the facts established in this case the Court makes this additional Finding of Fact. The pecuniary losses, which is the measure of recovery under the Alaskan Death Statute, supra, resulting from the death of plaintiff's decedent, William J. Knecht, are $55,000. The decedent had an expectancy of 43.88 years and a potential earning capacity in excess of $80 per week within a relatively short time. That the much greater part of his earnings would have been expended upon his wife and child than on himself is a reasonable assumption. The Court feels, therefore, that the resultant losses to his family reduced to present value total the aforementioned amount, viz. $55,000.

■ The suit herein is based upon negligence and the right to recover for death due to negligence under the Alaskan Statute, supra, no matter how great the loss, is limited by that Statute to $15,000. Inferentially in his brief plaintiff's counsel concedes that the Government might possibly be entitled to a set off. He argues, however, that that set off should be applied against the upper bracket of any recovery and not against the first $15,000. With this contention I cannot agree.

It is clear from the statements made in the Brooks case, supra, and the cases of Snyder v. United States, D.C.1953, 118 F.Supp. 585 and United States v. Gray, 10 Cir., 1952, 199 F.2d 239, that the Government is entitled to set off from any recovery for death under the Federal Tort Claims Act payments made by the Government to survivors under the provisions of 38 U.S.C.A. § 700 et seq., supra, and Veterans Regulations No. 1 (A), 38 U.S.C.A. Chapter 12A following section 745, supra. While there is nothing in these sections or in their legislative history which would indicate that Congress intended that any amounts paid under those sections *must* be deducted from an award of damages under the Federal Tort Claims Act, under general principles of equity, the United States

should not be treated differently than any other private litigant and should not be compelled to pay twice for an element of damages. Congress in its wisdom has seen fit to provide payment to this bereaved family of a sum not less than $16,075. The limitation of recovery in the Alaskan Statute to $15,000 prevents an award of damages in this case in excess of that amount, which sum for the foregoing reason must be subject to set off of the amounts paid and to be paid under the provisions of 38 U.S.C.A. § 700 et seq., supra. Government witnesses have testified, and it is undisputed, that the minimum amount to be paid to Knecht's widow and child is $16,075. It is also undisputed that should the widow and child live their normal life expectancies, they may receive as much as $60,000. The practical question arises as to whether this plaintiff, the Administrator, under these circumstances is entitled to any verdict whatever. I hold that he is entitled to a general verdict in the sum of $15,000 against which the Government may off set the amounts already paid and to be paid under the provisions of 38 U.S.C.A. § 700 et seq.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of this suit.

2. Airman William J. Knecht, a member of the Armed Forces of the United States, at the time of the accident resulting in his death, was not then engaged "in a course of activity incident to military service".

3. The plaintiff is entitled to maintain this action under the Federal Tort Claims Act.

4. The plaintiff is entitled to a verdict in his favor in the sum of $15,000.

5. The United States is entitled to set off against the above entitled verdict, the amounts of money already paid, and such amounts of future payments as it must make in the nature of compensation payments under 38 U.S.C.A. § 700 et seq. up to the aforesaid sum of $15,000.