ARTHUR MORRISETTE *v.* CANADIAN PACIFIC RAILWAY CO.

May Term, 1903.

Present: TYLER, MUNSON, START, WATSON, and STAFFORD, JJ,

Opinion filed February 15, 1904.

*Master and Servant—Negligence—Injury to Servant—Dangerous Premises—Switches—Foreign Law—Enforcement— Comity—Pleading— Evidence—Experts—Opinion—Construction of Rule—Exceptions—Scope.*

A question, which is not raised by the objection and exception taken in trial court, will not be considered in the Supreme Court.

The law of Canada that contributory negligence does not bar the right of recovery but operates only to reduce the damages, relates to the right of action, not to the remedy.

Comity requires us to enforce the law of a foreign state, however unlike our own, unless it be either criminal or penal, or contrary to pure morals or abstract justice, or its enforcement would be of evil example to our people.

In a suit brought in Vermont by a resident of Canada against a Canadian corporation for injuries received there, the right of action is governed by the law of Canada; and, under an exception to the admission of evidence concerning the Canadian law on the ground that the case is governed by the law of Vermont, the Supreme Court will not consider whether the case should have been dismissed because, under the circumstances, a resort to our tribunals was needless and embarrassing.

One who is a practical railroad man and understands the mechanism and operation of switches, though not an engineer, is competent to testify that he knows of no reason why a certain switch might not have been set in a different place.

In an action by a brakeman for injuries caused by being struck from the side of a freight car by a switch alleged to have been negligently placed too near the track, it is proper, as bearing on the assumption of risk, to allow the plaintiff to show, by observations and measurements made after the accident, the position and relative distance of stirrups and grab-irons on cars of the same general character as those operated by him during his service.

When the evidence tends to show that all "two throw" switches were mounted with lanterns of a uniform size, and that the switch in question was a "two throw" switch; as tending to show the size of the lantern on the switch in question, it is proper to allow a witness to state his judgment of the size of "two throw" switch lanterns, and to allow another witness who had measured such a lantern to state its dimensions.

The rule of a railroad company providing that "conductors and brakemen of freight trains approaching stations must be out on their trains at least one mile from stations, and must remain until station is passed," is equally applicable to all trains approaching a station whether about to stop or not.

In an action by a brakeman for injuries caused by being struck from the side of a freight car by a switch alleged to have been negligently placed too near the track, there is no presumption of negligence on the part of the defendant from the mere happening of the accident.

In a suit brought in Vermont by a resident of Canada against a Canadian corporation for injuries received there, it is not error to refuse to instruct the jury that if the plaintiff failed to establish that the Canadian law was settled, and settled as he alleged, and different from the law of Vermont, then it was not to be considered.

An exception to a portion of the charge as given is not sufficient to cover an objection to the failure of the court to charge.

CASE for personal injuries.    Plea, the general issue. Trial by jury at the September Term, 1902, Orleans County, *Haselton*, J., presiding.    Verdict and judgment for plaintiff. The defendant excepted.

This case has been once before in the Supreme Court. See 74 Vt. 232.

The plaintiff was unable to tell what car in the train he was attempting to mount when he was struck by the switch. The opinion states the other facts.

*F. E. Alfred* and *W. W. Miles* for the defendant.

The plaintiff in his declaration alleged "that said injury arose solely because of said negligence of the defendant, and

without any fault on the part of the plaintiff." Having thus alleged his lack of negligence the plaintiff must prove the same. *'Barber* v. *Essex,* 27 Vt. 69; *Walker* v. *Westfield,* 39 Vt. 246; *Bovee* v. *Daniels,* 53 Vt. 183; *Melendy* v. *Ames & Co.,* 62 Vt. 14; *Baker* v. *Sherman,* 73 Vt. 26; Gould's Pleading, Ch. 3, §§ 35-41; *Deragan* v. *Rutland,* 58 Vt. 128; *Dixon* v. *Ramsay's Exrs.,* 3 Craunch 319; *Scoville* v. *Canfield,* 14 Johns 338; *Pickering* v. *Fisk,* 6 Vt. 102; *Suffolk Bank* v. *Kidder,* 12 Vt. 464; *Harrison* v. *Edwards,* 12 Vt. 648.

The foreign law upon which the plaintiff rests his case permits a recovery notwithstanding contributory negligence. This law is opposed to public policy, is demoralizing to jurisprudence, is contrary to our own law, and should not be enforced by our courts. Rorer on Inter-State Law, pp. 4-5; Story on Conflict of Laws, §§ 557-571-572; Dicey on Conflict of Laws, p. 660, rule 176; *Pierce* v. *O'Brien,* 129 Mass. 314; *Green* v. *Buskirk,* 7 Wall. 138; *Canaga* v. *Taylor,* 70 Am. Dec. 62; *Blanchard* v. *Russell,* 13 Mass. 6; *Wheelwright* v. *Depeyster,* 1 Johns. 470; *Smith* v. *McAtee,* 92 Am. Dec. 641; *Texas & Pac. Ry. Co.* v. *Richards,* 68 Tex. 375; *St. Louis R. R. Co.* v. *McCormick,* 71 Tex. 660; *Richardson* v. *R. R. Co.,* 98 Mass. 85; *Higgens* v. *R. R. Co.,* 155 Mass. 176; *Anderson* v. *R. R. Co.,* 57 Wis. 321; *Dennick* v. *R. R. Co.,* 103 U. S. 11; *McLeod* v. *R. R. Co.,* 58 Vt. 727; *Burns* v. *R. R. Co.,* 113 Ind. 169; *Cincinnati, etc., R. R. Co.* v. *McMullen,* 177 Ind. 439; *Vawter* v. *R. R. Co.,* 84 Mo. 679.

The plaintiff was not competent to give an opinion as to whether the switch could have been set in a different place. *Lester* v. *Pittsford,* 7 Vt. 161; *Clifford* v. *Richardson,* 18 Vt. 620; *Crane* v. *Northfield,* 33 Vt. 124; *Sturgis et al.* v. *Knapp et al.,* 33 Vt. 531; *Oakes* v. *Weston,* 45 Vt. 430; *Bixby* v. *M. & St. J. R. R. Co.,* 49 Vt. 123; *Stevenson* v. *Gunning's Est.,* 64 Vt. 612; *Sias* v. *Consolidated Lighting Co.,* 73 Vt. 35.

*J. W. Redmond* and *E. A. Cook* for the plaintiff.

To justify the court in refusing to enforce a right of action which accrued under the laws of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice or that for some other such reason the enforcement of it would be prejudical to the general interests of our citizens. *Dennick* v. *R. R. Co.,* 103 U. S. 11; *McLeod* v. *R. R. Co.,* 58 Vt. 727; *Herrick* v. *Minneapolis, etc. Co.,* 47 Am. Rep. 771; *Chicago, etc. R. R. Co.* v. *Rouse,* 44 L. R. A. 410; *Boston & Maine R. R. Co.* v. *McDuffey,* 79 Fed. 934; *Ill. Cent. R. R. Co.* v. *Ihlenberg,* 34 L. R. A. 393; *Northern P. R. Co.* v. *Babcock,* 154 U. S. 190; *Hovis* v. *Richmond, etc. R. R. Co.,* 91 Ga. 36; *Rich* v. *Saginaw, etc. Co.* (Mich.) 93 N. W. 632; *Brewster* v. *Chicago, etc. R. R. Co.* (Iowa), 86 N. W. Rep. 221; *Atchison, etc. R. R. Co.* v. *Moore,* 29 Kan. 632; *Ill. C. R. Co.* v. *Harris,* (Miss.) 29 So. Rep. 760; *Walsh* v. *R. R. Co.,* 160 Mass. 571; *Louisville, etc. Co.* v. *Whitlow,* 41 L. R. A. 614; *Clark* v. *Russell,* 97 Fed. 900; *Bridger* v. *Asheville, etc. R. Co.,* 27 S. C. 456; *East Tenn. etc. R. Co.* v. *Lewis,* 89 Tenn. 235.

Under the declaration in this case, the right of action, and the liability of the defendant, is governed wholly by the law of Canada. *LeForrest* v. *Tolman,* 117 Mass. 109; *Buckles* v. *Ellers,* 37 Am. Rep. 156; 56 L. R. A. 194, note.

STAFFORD, J.   The plaintiff was a brakeman upon one of the defendant's freight trains, and claimed to have been injured through the negligence of the company in maintaining a switch too near the track, so that when he was attempting to mount a moving car he struck against it and was knocked off.

The accident occurred in the Province of Quebec, and the declaration, treating the law of the province as matter of

fact, alleges that the defendant as employer of the plaintiff owed him the care and oversight which the good father of a family owes to his children and was bound to guard him even against his own mistakes and thoughtlessness; that neither assumption of risk nor contributory negligence constituted a bar to the right of recovery, but operated only to reduce the damages.

The defendant objected to any and all evidence of the law of Quebec, upon the ground that as it was alleged in the declaration, it was "in direct conflict with the law of Vermont, and related not to the right of action but solely to the remedy." The objections stated were overruled, an exception was allowed, and the plaintiff introduced evidence in support of his allegations. Under this exception the defendant, in this Court, presents the objection that the plaintiff should not have been permitted to make good his declaration touching the law of the province on the subject of contributory negligence because he had also alleged that the defendant was in fact wholly free from fault,—that having made the latter allegation he was bound to prove it. This question is not raised by the objection and exception and is not considered.

It is next objected that evidence as to the law of contributory negligence was inadmissible because it related not to the right of action but only to the remedy. But we think it related clearly to the right of action. By the laws of Vermont it was a bar; by the laws of Canada, as the evidence in question tended to show, it was not a bar.

It is further objected that the Canadian law, as alleged, although neither criminal nor penal, is so different from ours that we ought not to administer it. Comity does not require us to take up and enforce the law of a foreign state which is contrary to pure morals, or to abstract justice, or to enforce

which would be contrary to our own public policy. The law we are considering is not claimed to be open to either of the first two objections but is claimed to be open to the third, because it is so different from the law of Vermont. Some states have adopted this view, declining to administer foreign laws unless closely analogous to their own. *Mexican National Ry. Co.* v. *Jackson,* 89 Texas, 107; *Anderson v. M. & St. P. Ry. Co.,* 37 Wis. 321; *Richardson* v. *N. Y. C. R. Co.,* 98 Mass. 85. But we believe the sounder opinion is that a court should not, in otherwise proper cases, refuse to adopt and apply the law of a foreign state, however unlike the law of its own, unless it be contrary to pure morals, or abstract justice, or unless the enforcement would be of evil example and harmful to its own people and therefore inconsistent with the dignity of the government whose authority is invoked. Judged by that test the ruling was correct. *Herrick* v. *Minneapolis, etc. Co.,* 31 Minn. 11, 47 Am. Rep. 771; *Higgins* v. *R. Co.,* 155 Mass. 180; *Dennick* v. *R. Co.,* 103 U. S. 11; *McLeod* v. *R. Co.,* 58 Vt. 727, 6 Atl. 648; *Chicago & E. I. R. Co.* v. *Rouse,* 178 Ill. 132, 44 L. R. A. 410.

It is still further objected that in the circumstances of this case, a resort to our tribunals was so needless and so embarrassing that the County Court should have refused to entertain the complaint. See *Western Ry. Co.* v. *Miller,* 19 Mich. 306; *Gardner* v. *Thomas,* 14 Johns. 134. The defendant is a Canadian corporation, the plaintiff is a resident of Canada, and there the accident occurred. The courts of the Dominion were open to the plaintiff, the witnesses could there have been compelled to attend and testify in person, a view could have been ordered if necessary, and the governing law would have been determined by judges, without the necessity of a tedious and perplexing trial by jury

to settle the law as a question of fact. Without saying what might or ought to have been done if a motion to this effect had been made at the outset of the case, we do not feel at liberty at this time and under this exception to say that the proceeding should have been dismissed. The exception was merely to the admission of evidence concerning the law of Canada on the ground that the case was governed by the law of Vermont,—a position that cannot be sustained. *Morrisette* v. *Pacific Ry. Co.,* 74 Vt. 232, 52 Atl. 520.

The court found that the plaintiff, although not an engineer, was "a practical railroad man," upon evidence "that he had had experience as a yard man and brakeman, and in operating various switches, and had knowledge of what a switch rod is, what its connections are, and how it works in connection with the switch to move the rails so as to change the track"; and thereupon permitted him to testify that he knew of no reason why the switch in question, which stood between the main line and the siding, could not have been set on the other side of the main track and on the other side of the platform, in what the plaintiff claimed would have been a safer place. To this the defendant excepted, and still urges that only an engineer could be an expert upon such a question. We cannot accede to this view. An engineer's opinion might indeed be of more value, but one having the plaintiff's experience might properly be found, and we must suppose was found, by the court, to be better able than men in general to form an opinion upon the subject. He might be able to see at once some objection to the proposed change which the inexperienced man could not see; and if he could in fact see no objection it would be some evidence that none existed; indeed it might be strong evidence that no very obvious objection existed. If other objections did exist, which only an

expert of wider experience and more thorough training could understand or discover, the field was open to the defendant and was in fact entered and improved by it.

The plaintiff claimed that when he was struck by the switch, or the lantern on top of the switch, he was in this position: his feet on the stirrup at the bottom of the side of the car, his hands "hold of the grab-iron." The defendant claimed that the relative position of the stirrup and grab-iron were such that he could not in that way have swung out far enough from the car to have been struck. It also claimed that if the accident did occur in that way the risk was obvious and was assumed. The accident happened April 3, 1900. On January 2, 1901, Mr. Cook, one of the plaintiff's counsel, visited the place and watched a long freight train draw in upon the same siding, and observed the cars in respect of grab-irons and stirrups and their distance from each other. He had been in the habit of noticing in the same respects the cars that had been passing over the road for several years, and testified that these were of the same general character as those. The plaintiff was with Mr. Cook on January 2d, and his testimony was that the cars in the train which they watched were, in part at least, such as he had had to operate through the years of his service, and such as were in the train at the time he was injured. Upon this basis Mr. Cook was permitted to testify to the distance between the grab-iron and the stirrups on the cars in that train, and to explain the point at which the stirrup was attached in respect of being under or flush with or projecting beyond the side of the car. It is claimed by the plaintiff that no exception was really taken to this testimony, but as we read the bill and the transcript we consider that the question was saved. The testimony was admitted as bearing on the assumption of risk. We understand the evi-

dence referred to above as fairly tending to show that the cars which Mr. Cook observed and described were such cars in respect of grab-irons and stirrups as the plaintiff's duty required him to mount from day to day, and the description of them was therefore properly presented to the jury to aid them in determining whether the plaintiff was to be considered as having assumed the risk of such an accident as befell him. It was really a description of the place where he had to work, and, considering the shifting and changing character of the objects with which he had to deal, was perhaps as certain and definite in its nature as could be expected. Whether it was admissible for any other purpose, it is not necessary to decide. See *Hoskinson* v. *Central Vt. R. Co.*, 66 Vt. at 626, 627, 30 Atl. 24.

The plaintiff having testified that at the time he was injured there were in use upon the defendant's road "two-throw" and "three-throw" switches, and that the switch where he was hurt was a "two-throw," and that the lanterns upon such were of uniform size, was properly allowed to state his judgment of the size and shape of a "two-throw" switch lantern; and Mr. Cook, who was shown one of these by the plaintiff, and measured it, was properly allowed to testify to the measurement.

At the time of the accident the plaintiff was serving as front brakeman upon a freight train of twenty and more cars moving westerly. The accident occurred in the station yard at Lennoxville. The next station west of Lennoxville is Sherbrooke. Plaintiff's train was ordered to stop at Lennoxville and there meet and pass a train coming from the west. Consequently it drew in upon the siding. Beyond the station building was a highway crossing, which the law of the province required should not be obstruced by trains for more than

five minutes at a time. So the plaintiff claimed that as his train approached the station building he got off and inquired of the man in charge whether the train they were to meet had already left Sherbrooke; because he knew that if it had, there would be no occasion to cut the train, whereas, if it had not, there would be, for it would be more than five minutes before the expected train would arrive. Thus he claimed that he was acting in the line of his duty in dismounting and in attempting to remount the moving train, while the defendant claimed that he was bound to have remained on top of the car, at his post, at least until the train came to a full stop. In support of its position the defendant offered a rule contained in a book which the plaintiff and other employees had from the defendant prescribing their duties. The rule is: "107. Conductors and brakemen of freight trains approaching stations must be out on their trains at least one mile from station, and must remain until station is passed. (See Rule 69.)" Rule 69 therein referred to is: "Flag stations. All trains must approach flag stations, or stations not furnished with semaphores, very cautiously, expecting to find main line occupied at such stations, whether they be stopping places on time table or not, and must pass cautiously through side tracks and large yards and over switches. Mixed and freight trains must not exceed a rate of six miles per hour through places above specified." It was shown that, in the railroad business, "station" means the whole tract within the limits of the station yard, and not the buildings merely, or the immediate vicinity where they are located. It also appeared that Lennoxville was not a flag station, nor one "not furnished with semaphores." The trial court, taking both rules into consideration, held the offered rule immaterial and inadmis-

sible on the ground that it applied only to trains that were to pass without stopping.

The rejected rule was a direction from the master to the servant, couched in general terms equally applicable to all trains approaching a station, whether about to stop or not. The reason of the thing would require the brakeman to be out on the car when approaching the yard as much in one case as in the other. It would not be supposed that he would remain in the caboose. It is not necessary or proper to treat it as an iron-bound order, not to be varied from in any circumstances, but rather as a general direction that when approaching a station and until the station is passed, the brakeman's post of duty is "out on the cars." He might have to leave it for a moment to perform his brakeman duties. The jury might even find as a fact that he was right in leaving his post to make such an inquiry as was made on the present occasion. But the question is whether the rule was not admissible as a general order to be considered in connection with any others that might apply and with all the circumstances? In this view it might fairly be taken to mean that for a mile before reaching the limits of the station yard, and until the yard limits were passed in leaving the station, the brakeman's duty was to be out on the cars unless some immediate and more imperative duty required him to be absent for the time being. In the present case the jury might have found, if they had had this rule before them, that even if the plaintiff did need to leave his post to make the inquiry he did not need to leave it until the train stopped, and so might have failed to find that he was acting in the line of his duty when he got hurt. It seems to us that the rule should have been admitted.

The defendant presented eighteen requests to charge. The thirteenth and fifteenth were treated as complied with.

To the refusal to comply with the others exception was taken. Most of these were requests to charge, as the substantive law, that the case was governed by the law of Vermont, and so were properly refused. The first and seventeenth, however, demand separate consideration.

The first was, "There is no presumption of negligence from the mere happening of the accident." This touched a rule of evidence and so properly appealed to the law of the forum. It was not in terms complied with, although it was a correct statement of the law as applied to the case in hand. Yet the omission is not necessarily error if the charge as a whole conveys the same impression, and it certainly does. We cannot think that any juror after listening to it could entertain any idea that negligence could be inferred from the mere fact that the accident happened. The jury were told that to recover the plaintiff must prove that he was knocked off by the switch, that he was acting in the line of his duty at the time, and that the defendant was guilty of negligence in maintaining the switch where it was,—that the burden was on the plaintiff to make out each one of these propositions by a fair balance of testimony. If it was necessary for the plaintiff to prove that the defendant was guilty of negligence, even after proving that the plaintiff was knocked off by the switch in the performance of his duty, then of course the negligence was not proved by the mere fact that he was so knocked off. There could have been no doubt in the minds of the jury upon that point.

The seventeenth request was that if the plaintiff failed to establish that the Canadian law was settled and settled as he alleged and different from the law of Vermont, then it was not to be considered. The request as drawn was properly refused. The question, what the law of Canada was, was

made an issue of fact and was to be tried and decided like any other.   It was for the plaintiff to make out that it was substantially as alleged.   If he failed to do so, he failed in his case, regardless of what the law of Vermont might be.   If the charge permitted the plaintiff to recover under a different rule of Canadian law than the one he had alleged, no exception was taken in that respect.

In regard to the question of the defendant's negligence in maintaining the switch where it was, the court told the jury to take into consideration all of the evidence bearing upon what the situation was, whether the switch could have been moved and whether, if it could not, the tracks could have been spread apart.   Exception was taken in these words: "To the charge with reference to whether the defendant was negligent in not spreading its tracks further apart, and also, in connection with that, to what the court said as to whether this switch could have been maintained in any other position or a safer place."   It is urged that "it was error not to have called attention to all the important considerations indicating negligence on the part of the defendant, having called attention to a part"; that the portion of the charge excepted to was misleading as indicating that the question of negligence depended upon the mere question whether the switch could have been moved or the tracks spread apart, whereas there was no question but that these things might have been done and the real question was whether such change would have made the place safer to work in.

We observe first that the exception was not to the omission to call attention to other facts, but to the charge as given. The defendant well says that of course the switch could have been moved or the tracks spread apart.   Then it is not to be supposed that the jury understood the words in the narrow

sense of whether the change was physically possible, but in the broader sense of whether it was practicable and demanded by the rule of obligation which should be found by the jury to exist under the Canadian law. Such was the evident meaning as shown by the context, wherein the jury were directed to consider "all of the evidence bearing upon what the situation was."

The remaining exception is to the supposed omission to charge "with respect to the effect of the law of Canada if found to be as claimed by the defendant—that contributory negligence constitutes a bar to the right of recovery." We find no such omission in the charge as first given, and after the exception was taken a more explicit statement was made to which no exception was reserved.

*Reversed and remanded.*