ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY v. ROGERS.

## Opinion delivered January 10, 1927.

1. MASTER AND SERVANT—PERSONAL INJURIES—CONTRIBUTORY NEGLI-
GENCE.—In an action by an employee for injuries received in fall-
ing from the raised apron of a locomotive engine, where the tes-
timony showed that there was no negligence in propping up the
apron and that a safe place was furnished for his work, it was
error to refuse to direct a verdict for defendant.

2. MASTER AND SERVANT—SAFE PLACE TO WORK.—It is the master's
duty to exercise ordinary care to furnish to servants a safe place
to work.

3. MASTER AND SERVANT—NEGLIGENCE—BURDEN OF PROOF.—In an
action by an employee for injuries received in the course of his
employment, the burden is on the plaintiff to show that the
employer was guilty of actionable negligence.

4. MASTER AND SERVANT—NEGLIGENCE—WHAT LAW GOVERNS.—In an
action by an employee for personal injuries received in another
State, the law of that State governs as to the negligence of the
employer and the contributory negligence of the employee.

5. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—An employee
was guilty of contributory negligence as matter of law where he
stepped on the apron of a locomotive engine when it was so inse-
curely propped that any prudent employee, in exercise of ordi-
nary care, was bound to know and appreciate the danger of doing
so.

Appeal from Randolph Circuit Court; *John C. Ash-
ley*, Judge; reversed.

*E. T. Miller* and *W. J. Orr*, for appellant. *Schoon-
over & Jackson*, of counsel.

*Booth & Higginbotham* and *Pope & Bowers*, for
appellee.

WOOD, J. The appellee instituted this action against
the appellant for damages for personal injuries. The
facts, stated most strongly in appellee's favor, are sub-
stantially as follows: Appellee was an employee of the
appellant in its shops at Chaffee, Missouri, on February
11, 1925. He had been working inside the shops or
roundhouse about four or five days before his injury.
Appellee was working under Fred Williams, a mechanic,
as his helper. The locomotive on which he was working
at the time of his injury had been in the roundhouse sev-

eral days for repairs. These repairs consisted of work on the engine, and also repairs on the tank. To make the repairs on the tank it was necessary to uncouple it from the engine and move it away from same. Williams was testing the superheater of the engine, and, not getting the expected pressure, he sent the appellee into the cab to see if the throttle was open. There are three routes one may take from the front end of a locomotive to the cab: one along the running-board to the engineer's front window, one along the running-board to the fireman's window, and the third along the ground to the rear of the engine and thence into the cab. If the engine and tank are coupled together, one entering the cab uses the steps on the tank. If the tank is separated from the engine, as it was in this case, one has to climb into the cab by means of iron hand-hold and rods that extend down the side of the cab. The appellee was on the running-board that runs along the side of the boiler. He went to the door or window of the cab on the right side of the engine, and it was locked from the inside. He then descended from the engine to the ground, and went back to the cab and caught hold of the iron rods that extended down the side of the cab and pulled himself up into the cab. The appellee had been on engines before that time, two or three times, but had never been on an engine from which the tender was disconnected. They had been working on the engine about thirty minutes at the time of the injury. The appellee had performed this work that he was called upon to do once or twice before, and in the same manner that he performed it at the time he was injured. In order to test the superheater, the throttle to the engine must be opened. The throttle is located in the cab of the engine, alongside the engineer's seat. It is an appliance which the engineer uses to apply the steam when he is operating the engine. The engineer works it with his left hand while seated in his seat. It is easily operated. The throttle was about as high from the lower deck of the cab as a man's head. There is a piece of steel, called an apron, attached to the engine by

hinges, which covers the space between the engine and the tank when the engine and tank are coupled together. When the tank is separated from the engine, the apron drops down in a vertical position. When the tank and engine are coupled together, the loose side of the apron rests on the floor of the tank, which allows it to move when the engine and tank are in motion. When it is necessary to couple the tank to the engine, the apron must be elevated so as to allow the floor of the tank to run under it. The apron makes the floor between the engine and tank continuous when they are connected. The usual and proper method of elevating the apron so that the tank may run under it when coupled to the engine was to support the apron with a square oak stick about 22 inches long, having a blunt end and a sharpened end, the blunt end resting on an iron projecting from the engine and the sharpened end fitting into one of the indentations on the under side of the apron. The apron, at the time of the injury, was elevated by this prop in the usual and proper manner. The space between the inner edge of the apron and the fire-box of the engine was twenty-four inches in width. When the appellee reached the cab on the engineer's side he found the throttle standing nearly open and extending back over the engineer's seat. The appellee reached up and took hold of the throttle to see if it was entirely open, and, in doing so, placed himself in a pulling position, putting his left foot back on the apron and his right foot up on a step leading to the engineer's seat. The apron gave way, and precipitated the appellee into the pit, causing the injuries of which he here complains. The mechanic, Fred Williams, under whom the appellee was working, had been upon the cab a few minutes before the injury, and had pulled open the throttle himself. He went upon the cab from the same point the appellee went upon it. He noticed that the apron had been propped up for thirty minutes or an hour. He didn't notice when it was first propped up. The apron had been propped up for the purpose of connecting the coal tender. To raise the apron required only about a min-

ute. It is done merely by raising the apron with the left hand and placing the stick under it, as above indicated. When appellee came from the front of the engine to the cab, he was facing the tender or tank, some thirty or forty feet away from the engine. No one was then on the tender or tank, and it was not being brought up to the engine. Appellee did not climb into the engineer's seat before he moved the throttle. In moving the throttle it was not necessary for the appellee to place either foot on the apron.

The appellee alleged that it was his custom, in the performance of his duty, and a necessary part of his duty, to step back with one foot on the apron which connected the cab or engine with the tender or tank attached to the cab or engine; that, at this particular time, he adopted the usual and customary course in performing his duty; that another one of appellant's employees had disconnected the tender or tank from the cab or engine, and such employee, in the usual course of his employment, had placed a stick under the apron which is used to connect the engine and tender, and left the apron temporarily propped in a horizontal position, easily thrown down; that the act of raising said apron and propping it took only a very few seconds of time; that the fellow employee propped up the apron, and negligently and carelessly left it so propped for a long and unnecessary period of time; that the appellee did not know that the apron was temporarily propped, and believed that it was in its usual safe condition; that, in performing his duty as an employee of the appellant, in closing the throttle he braced himself and placed his left foot on said apron, and, in doing so, the apron fell, precipitating the appellee into the pit, four or five feet deep. At the time of his injury appellee was 29 years old.

The appellant, in its answer, denied specifically the above allegations of negligence, and set up the affirmative defenses of contributory negligence and assumed risk on the part of the appellee, and also set up that the appellee had voluntarily executed to the appellant a release of

all liability, if any, for the injury which he had sustained. In the view we have taken it becomes unnecessary to set forth this alleged release and the testimony concerning its execution. It also becomes unnecessary, in view of the conclusion reached by us, to set out the allegations of the pleadings and the testimony concerning the nature of the appellee's injuries and the prayers for instructions granted and refused on the issue of the release. At the conclusion of the testimony the appellant moved the court to direct the jury to return a verdict in its favor, which instruction the court refused, to which ruling the appellant duly excepted. From our conclusion on the undisputed facts of the case, it becomes unnecessary to set out the prayers for instructions granted and refused on the issues of negligence, contributory negligence, and assumed risk.

The jury returned a verdict in favor of the appellee in the sum of $2,500. Judgment was rendered in his favor for that sum, from which is this appeal.

1. The court erred in refusing appellant's prayer for an instruction directing the jury to return a verdict in its favor. The undisputed testimony proves that the appellant was not negligent in having the apron to the engine propped up in the manner disclosed by such testimony. It is shown by the uncontroverted testimony that, when the engine and tender have been uncoupled and separated and it becomes necessary to again couple them, the apron attached to the engine must be elevated and propped up so as to allow the tender or tank to slip under the same and couple to the engine. The apron, at the time of the appellee's injury, was elevated in order to enable the tender to be coupled thereto, and it was propped up and supported by a stick in the usual and proper manner. There was therefore no negligence on the part of the appellant in the method used by it in raising the supporting apron. The method used was the proper and usual one. Indeed, the appellee does not allege that the method used by the appellant in elevating and supporting the apron was negligent. The only neg-

ligence alleged is that the employee of the appellant left the apron propped up for a long and unnecessary period of time. But this was not negligence on the part of the appellant, for the reason that the appellant owed appellee no duty to leave the apron down or in its vertical position while the engine and tank were uncoupled. While the undisputed testimony shows that it was only necessary to elevate the apron in order to allow the tank to slip under the same to make the coupling, and that this could be done in a minute of time, nevertheless it was not negligence on the part of the appellant to elevate the apron as soon as the engine and tank were uncoupled and to prop the same in the usual and proper manner and to leave the same in that position in order that the tank and engine might be recoupled when it became necessary. The leaving of the apron elevated in this manner, while the engine and tank were undergoing repairs, was not an act of negligence on the part of the appellant. It was the duty of the appellant to exercise ordinary care to furnish the appellee a safe place to work. The leaving of the apron elevated in the manner indicated did not render the appellee's place of work, in opening the throttle for the purpose of testing the superheater, unsafe. The apron was designed as a walkway and covering for the coupling or space over the coupling between the tank and the engine. It was not designed as a place whereon the appellee and the mechanic working about the engine were to stand or walk. There is no testimony in the record tending to prove that this apron had ever been used, with the knowledge of appellant, by any of the employees of the appellant as a place on which to stand or to place their feet when it became necessary to open the throttle or to do any repair work about the engine. The undisputed evidence shows that it was unnecessary for the appellee to place his foot upon the apron while he was opening or attempting to open the throttle. The place for him to stand or for him to occupy while opening the throttle, which was furnished by the appellant for that purpose, was perfectly safe. The appellee's own testi-

mony shows that the space between the fire-box and the point where the apron was connected with the cab was about two feet, and his own testimony, and the other undisputed testimony in the record, shows that, in opening or operating the throttle, it was wholly unnecessary for the appellee to place his foot and rest his weight upon the apron. The apron was not elevated and left in the position for that purpose, and the place for appellee to do his work in the proper manner was perfectly safe. If the appellee, in the exercise of ordinary care for his own protection in the performance of his duty, had occupied the place and used the instrumentalities the master had furnished in the manner they were intended to be used, he could not have been injured. The burden was upon the appellee to show that the appellant was guilty of actionable negligence. This he has wholly failed to do.

The case is ruled by the doctrine announced by the Supreme Court of Missouri in *Manche* v. *St. Louis Basket & Box Co.*, 262 S. W. 1021, as follows: "It is sufficient that defendant was guilty of no actionable negligence, because plaintiff made use of the platform for a purpose for which it was not furnished or intended by defendant and for a purpose not shown to have been customarily made of it with knowledge on the part of defendant." See also *Grattis* v. *K. C. P. & G. Ry. Co.*, 153 Mo. 380, 55 S. W. 108, where it is said: "The master cannot be adjudged guilty of a failure of duty where he furnishes a servant machinery and appliances which are reasonably safe when used in the manner they are intended to be used, but which may become dangerous if their use is perverted by the servant." See also *Royal* v. *White Oil Corporation*, 160 Ark. 467, 254 S. W. 819.

The undisputed testimony, as we view this record, shows that there was no actionable negligence on the part of the appellant, because, as we have stated, the appellant owed the appellee no duty to keep the apron in a vertical position while the engine and tender were separated, and owed the appellee no duty not to elevate

such apron and to keep it propped in the usual and proper manner for the recoupling of the engine and tender after same had been separated.   Appellee's own testimony and the other undisputed testimony in this record proves conclusively that the proximate cause of appellee's injury was his own negligence in placing his foot and resting his weight upon the apron when the cars were uncoupled.

2.   But if we be mistaken, and if it could be said that there is testimony to justify the inference that appellant was guilty of negligence in not leaving the apron down, in a vertical position, until such time as was necessary to elevate and prop the same for the purpose of immediate recoupling of the tender and engine, nevertheless the appellee, in such case, is not entitled to recover, because the undisputed evidence shows that he was guilty of contributory negligence.   As the injury occurred in Missouri, the law of that State governs as to the negligence of the master and the contributory negligence of the servant.   *St. Louis-San Francisco Ry. Co.* v. *Bates,* 163 Ark. 335, 258 S. W. 992.

In *Mathis* v. *Stockyards Co.,* 185 Mo. 434, 447, it is said: ''But, if the appliance is obviously so dangerous that it cannot be safely used even with care or caution, or, as it is sometimes said, if the danger of using it is patent or such as to threaten immediate injury, then the servant is guilty of contributory negligence if he uses it, and the master is not liable, notwithstanding his prior failure of duty.   Mere knowledge of the danger in working with the defective instrumentality will not defeat the action unless the danger was so glaring as to threaten immediate injury.''

Now, the undisputed testimony shows that the mechanic and his helper, the appellee, had been working about the engine for thirty minutes.   The apron had been elevated and propped up between a half hour and an hour in the manner indicated by the testimony and the photographs adduced in evidence.   While the appellee testified that the position of the apron was the same, as near as he could tell, as when he operated it before,

nevertheless the undisputed testimony shows that the tank was disconnected from the engine, and the appellee knew this fact. In the exercise of ordinary care for his own protection in the performance of his duties about the engine, he was bound to know that the apron was not supported by the tank which made it secure as a floor on which to walk, but that it was only supported by a stick in the center of the apron. The apron was six feet long and two feet wide. The supporting stick was blunt at one end and sharpened at the other, and was loose at both ends, resting temporarily on the iron of the engine at the blunt end and supporting the apron at the sharpened end. The danger or risk of stepping with one foot and resting one's weight, wholly or partially, upon the apron, thus so insecurely supported, was so obvious and imminent that any prudent employee, in the exercise of ordinary care for his own protection in the performance of his duties, was bound in law to have known and appreciated it. The risk was so glaring that no prudent man would be willing to subject himself to the hazard of doing the work in the manner it was being done by the appellee. See *St. L. I. M. & S. Ry. Co.* v. *Holman,* 90 Ark. 555-567. Such being the fact, under the law of Missouri, as above mentioned, he was guilty of contributory negligence which bars his recovery.

After carefully considering the testimony in this record, it occurs to us that the above are the conclusions, and the only conclusions, from the testimony to which all reasonable minds must come. Therefore it is our duty to declare as a matter of law that the appellant is not liable. The judgment is therefore reversed, and, inasmuch as it appears that the cause has been fully developed, the same will be dismissed. It is so ordered.