ATCHISON, T. & S. F. RY. CO. v. SPENCER et al.

Circuit Court of Appeals, Ninth Circuit.
August 1, 1927.

No. 5038.

**1. Railroads ⟺327(1)—One about to drive motor vehicle over railroad track has duty to vigilantly use sight and hearing.**

One who is about to drive a motor car or truck over a railroad track at an unguarded crossing always has the obligation to vigilantly use his faculties of sight and hearing.

**2. Railroads ⟺327(12)—One whose pushing alone enabled truck to mount railroad grade held not "passenger," exempted from exercising care otherwise required.**

Seventeen year old boy, whose pushing of truck having defective motor alone enabled it to mount grade at railroad crossing, *held* not to occupy position of "passenger" or guest, not required to exercise care required of driver.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Passenger.]

**3. Railroads ⟺327(12)—One pushing truck up railroad grade at crossing held contributorily negligent in failing to look for train.**

Boy, whose pushing alone enabled truck driven by his father to mount railroad grade, *held* contributorily negligent as matter of law in failing to look for approaching train, notwithstanding inconvenience in looking arising from his position while pushing.

**4. Courts ⟺352(5)—Arizona Constitution held not to require submission of question of contributory negligence to jury, where plaintiff resided and accident occurred in New Mexico (Const. Ariz. art. 18, § 5).**

Where suit by resident of New Mexico to recover for injuries sustained in railroad grade crossing collision in New Mexico was brought in federal court in Arizona, *held*, Const. Ariz. art. 18, § 5, declaring defense of contributory negligence at all times a question for jury, did not require court to submit such defense to jury, where proved facts otherwise established contributory negligence and entitled defendant to directed verdict.

**5. Courts ⟺352(5)—Federal judge should direct verdict, where evidence is such that different verdict would warrant new trial, which rule is not controlled by state statutes or Constitution.**

In federal courts, whenever in trial of civil case it is clear that evidence does not warrant verdict for particular party, and that if such a verdict were rendered the other party would be entitled to a new trial, it is the right and duty of the judge to direct jury to find according to views of court, which rule is not subject to modification by state statutes or Constitution.

**6. Courts ⟺511—Right of action in one state is enforceable in another, in which case law of former controls right of action, and law of latter controls remedy.**

Whenever by common law or statute a right of action has become fixed in one state, that right may be enforced in another, where defendant may be found, if not against public policy of state in which right of action accrued, and in such suit the law of the place where the right was acquired or liability incurred governs the right of action, though the law of the state where the action is brought controls all that pertains merely to the remedy.

**7. Courts ⬯372(3)—Arizona Constitution, requiring contributory negligence to always be left to jury, held rule of substantive law, which federal conformity statutes do not require federal courts to apply (Const. Ariz. art. 18, § 5).**

Const. Ariz. art. 18, § 5, providing that defense of contributory negligence or assumption of risk shall in all cases be left to jury, is essentially a rule of substantive law, which federal conformity statutes do not require federal courts to apply.

**8. Railroads ⬯303(1)—Railroad's violation of statute requiring restoration of highways held not shown as affecting liability for injury (Code N. M. 1915, § 4697, subd. 5).**

As affects liability for injury at crossing, fact that angle of approach to railroad crossing may have been slightly altered when railroad was constructed *held* not to show violation of Code N. M. 1915, § 4697, subd. 5, requiring railroad to restore highways intersected to their former state as near as may be.

In Error to the District Court of the United States for the District of Arizona; F. C. Jacobs, Judge.

Action by Roy Spencer, an infant, by Sarah E. Spencer, his guardian ad litem, and Sarah E. Spencer, individually, against the Atchison, Topeka & Santa Fé Railway Company. Judgment for plaintiffs, and defendant brings error. Reversed, and cause remanded for new trial.

E. W. Camp, M. W. Reed, and Robert Brennan, all of Los Angeles, Cal., Chalmers, Stahl, Fennemore & Longan, of Phœnix, Ariz., and E. E. McInnis, of Oklahoma City, Okl., for plaintiff in error.

O. N. Marron and Francis E. Wood, both of Albuquerque, N. M., for defendants in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. This is a writ of error by the defendant railroad company to review a judgment of the United States District Court in Arizona in favor of plaintiff, who was seriously injured in a collision at a grade crossing in New Mexico.

The complaint alleged that the crossing where the accident occurred was dangerous, because view of approaching trains was cut off and obstructed by cuts, curves, and configuration of the ground; that the highway was negligently constructed, in that the tracks were on a grade 8 or 9 feet above the level at the point of crossing the tracks; that the condition of the crossing was unsafe because of topographical features, and that defendant should have restored the highway to

a safe condition; that the defendant should have maintained automatic signals or warnings of approaching trains; that the train which collided with the truck in which plaintiff was riding was being run at an excessive rate of speed; and that there was no bell rung or whistle blown to warn plaintiff.

Defendant denied all allegations of negligence and that the approaching trains could not be discovered by persons who exercised reasonable care and prudence, and alleged that any damages suffered were caused solely by the negligent acts and omissions of plaintiff and his father. For convenience the parties will be designated as in the lower court.

On a clear afternoon in June, 1923, plaintiff, then a boy 17 years old, and his father were in the father's Ford automobile truck, which was struck by the locomotive of defendant's passenger train at a road crossing near Mountainair, N. M. The father was driving. The boy did not know how to drive the truck. At the crossing a single track ran approximately east and west. Plaintiff was familiar with the location of the track and the road. The truck approached from the south. Several times during the last few miles of their travel, preceding the accident, the engine of the truck gave trouble. "The car started missing." The father had to drive in low speed most of the time, and on the hills it was necessary for plaintiff to push the truck from behind. The road ran parallel with the track for a distance of half a mile before reaching the crossing. About 100 feet on the south side of the track the road turned, rose gradually about 10 feet, and crossed the railroad track at right angles. At the turn the truck stopped for about half a minute. The plaintiff got out, looked in both directions, and saw no train. The father then started the truck, and plaintiff, going to the rear, pushed the vehicle continually until within 50 feet of the track, when, without releasing his hold, he stepped quickly to the right side of the truck, placing his right hand on the back of the seat and his left hand on a brace on the body of the car. Keeping that position, he walked along with the truck, pushing it up the grade until it reached the top and the front wheels were moving over the first rail. He jumped upon the running board of the truck, which was moving to the down grade, got into the seat, and then, for the first time, looked eastward and saw a train approaching about 50 yards away. Collision was unavoidable. The father was fatally, and the son seriously, injured.

Plaintiff testified that, if he had stopped

pushing, the truck would have backed to the bottom of the grade, and that from the position he was in when he was walking along the side of the car he could not turn his head and look behind him in the direction from which the train was coming, because to have done so he would have had to take his arm down and quit pushing; that his view of the train from the east would have been obstructed by a right of way fence, which with poles and boards "set up a distance of 4 feet," and a curve in the track "throws your head right against this fence on down the track." The fence referred to was a winged cattle guard extending out from the track about 6 feet. Plaintiff said further that, although at several times before starting up the grade he had seen his father stoop down and do something to the front of the car, he did not observe his father's position while he himself was walking along, pushing the truck as it approached the crossing. A witness for plaintiff testified that he saw the Spencers from the time they stopped at the corner of the right of way fence, when young Spencer began pushing the car up the grade; that the father then had hold of the steering wheel, and that when the truck was about half way between the corner and the railroad track he saw that "the old gentleman had this hand (indicating) on the wheel and was stooping down and fixing something on the car," and that he did not see the driver straighten up again.

Plaintiff also testified that, when they were about 500 yards from the crossing, he saw a freight train pass toward the east at a speed of about 20 miles an hour, and about 10 minutes thereafter the train that struck the truck came from the east. The distance between the crossing and the first station east, where a west-bound train could pass the freight train, was 1¾ miles. A passenger on the colliding train estimated the speed of the train at about 50 miles an hour; the engineer put the speed at between 30 and 35 miles. Approximately 850 feet east of the point of collision the train came through a cut. There was a whistling post a quarter of a mile east of the crossing, but there was no automatic signal at the crossing. To the west of the crossing the railroad ran through a cut, and from the corner post at the foot of the grade a train coming from the west could not be seen "more than a telegraph pole" (about 150 feet) before it reached the crossing.

Defendant company assigned as error the ruling of the court denying its motion, made at the close of the testimony, for a directed verdict, upon the ground that plaintiff was guilty of contributory negligence which barred recovery.

[1] As pertinent to the undisputed facts, the well-established rule is that one who is about to drive a motorcar or truck over a railroad track at an unguarded crossing always has the obligation upon him vigilantly to use his faculties of sight and hearing. The driver must look to see whether a train is approaching. If, for any reason, his view of the track is obstructed, his duty is to listen. If, perchance, the engine of his automobile is making any noise, or if there is noise or confusion due to any cause which interferes with his hearing, it is his duty to take the precaution of stopping and listening. If the track is a single one, he should be vigilant to look in both directions before attempting to cross.

[2] Plaintiff argues that the case is not wholly within those rules, and that the boy was in the relationship of a passenger or guest, as was Wright in Southern Pacific Co. v. Wright (C. C. A.) 248 F. 261, where it was held that if, in an automobile, there are two men in the relationship of passenger and driver, and the passenger believes the driver to be competent, and trusts to him to avoid the ordinary dangers, and there are no special circumstances to warn the passenger of danger, or to suggest the need of assistance, or even of advising the driver of the need of caution, the passenger may, as a rule, assume that the driver will not heedlessly or carelessly run into danger. The instant case, however, is very different. Here the plaintiff was not merely sitting in the car, leaving the sole management of the truck to his father. On the contrary, the father for some time before the accident had had but a limited control of the truck by reason of the inadequate motive power. The repeated assistance of the plaintiff had been necessary to surmount the grades, and was essential in ascending the grade to the track. Indeed, the main controlling element of power was the physical exertion of the plaintiff. Without his assistance, steadily sustained, the car could not ascend the grade; with it, it would and did. The plaintiff knew this.

Moreover, at times before going up the last grade he had seen his father stoop over in an attempt to repair the cause of the defective motor. Plaintiff therefore knew that his father was giving close attention to the faulty mechanism. This circumstance of itself should have made him vigilant with his own senses. So far as the plaintiff was concerned, there was no sudden or unexpected loss of power or other circumstance to dis-

tract his attention, which relieved him of the duty to exercise vigilance. Nevertheless, with the truck in a disabled condition, and with the control of its forward movement in his power, plaintiff pushed the car onto the track without looking eastward until after the front wheels were over the first rail and he had resumed his seat beside his father.

When we apply the fundamental test calling for the exercise of ordinary care and prudence in the situation plaintiff was in, we must reject his explanation, by way of excuse, that he was giving his whole attention to the car and to the possibility of a train coming from the west, and that the position of his body while pushing the car made it difficult to keep the car moving and at the same time to look eastward. Morehead v. A., T. & S. F., 27 N. M. 349, 201 P. 1048; Sandoval v. A., T. & S. F., 30 N. M. 343, 233 P. 840; Dernberger v. Baltimore & Ohio R. Co. (C. C. A.) 243 F. 21; Southern Ry. Co. v. Priester (C. C. A.) 289 F. 945; Kansas v. Chicago, etc., Co., 180 Wis. 49, 192 N. W. 383.

[3, 4] The case was therefore one where the undisputed evidence was of such a conclusive character that defendant's motion for a directed verdict should have been granted, unless, because the trial was in Arizona, the court was obliged to submit the question of contributory negligence as one of fact to the jury, under the Constitution of that state (article 18, § 5), which provides: "The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."

In Inspiration v. Conwell (1920) 21 Ariz. 480, 190 P. 88, the Supreme Court of Arizona held that, although the uncontradicted evidence showed assumption of risk, the language of the Constitution clearly indicated that the power or duty finally and conclusively to settle the question of contributory negligence was transferred from the court to the jury as "the sole arbiter of the existence or nonexistence of contributory negligence or assumption of risk in all actions for personal injuries," and that the verdict was conclusive upon the courts. Calumet & Arizona, etc., Co. v. Gardner, 21 Ariz. 206, 187 P. 563; Pacific, etc., Co. v. Cochran (Ariz.) 243 P. 405.

Plaintiff contends that the constitutional provision as construed in the last referred to. case was correctly applied by the court below under our decision in Southern Pacific Co. v. Martinez, 270 F. 770. That case must be

distinguished. There plaintiff administratrix was a citizen and resident of Arizona, where the cause of action arose. Action was brought in the state court against defendant, a citizen and resident of Kentucky. After removal to the federal court in Arizona, plaintiff recovered a verdict. On review this court carefully examined the evidence, and stated that the negligence of the driver of the automobile and of the plaintiff's intestate "might" have been sufficient to justify the trial court in directing a verdict for the railroad company, but for the fact that the Constitution of Arizona required submission of the defense of contributory negligence to the jury. We regarded the evidence as not clearly sufficient to have compelled a decision by the trial court that, if a verdict were rendered in favor of plaintiff, defendant would be entitled to a new trial, and cited Chicago, etc., Co. v. Cole, 251 U. S. 54, 40 S. Ct. 68, 64 L. Ed. 133, to sustain the view that, as there was an issue of fact, the Arizona Constitution required submission of that issue to the jury.

What rule would have controlled the federal court within the jurisdiction of Arizona, if plaintiff's own evidence had clearly disclosed contributory negligence, was not passed upon; nor was there such a question before the Supreme Court of the United States in the Cole Case, supra, which arose on a writ of error to the Supreme Court of Oklahoma, presenting the question whether by a provision of the Oklahoma Constitution, similar to the provision above quoted from the Arizona Constitution, the defendant railroad company had been deprived of a constitutional right. The court decided that the state was not prohibited from leaving the defense of contributory negligence to the jury, whether a question of law or of fact.

[5] Neither of those cases necessarily disturbs the doctrine quite recently reiterated in Barrett v. Virginian R. Co., 250 U. S. 473, 39 S. Ct. 540, 63 L. Ed. 1092, that in the federal courts, "whenever, in the trial of a civil case, it is clear that the state of the evidence is such as not to warrant a verdict for a party, and that if such a verdict were rendered the other party would be entitled to a new trial, it is the right and duty of the judge to direct the jury to find according to the views of the court," and that that rule "is not subject to modification by state statutes or Constitutions."

But we pass that question as not calling for decision in this case, for here the plaintiff's right of action arose, not in Arizona,

where he brought his action, but in New Mexico, where he resided, and where there is no constitutional or statutory provision similar to that in the Arizona, Constitution, and where the rule of decision is that in an action in negligence the trial court may direct a verdict, where the undisputed facts prove contributory negligence. Morehead v. A., T. & S. F., supra; Candelaria v. A., T. & S. F., 6 N. M. 266, 27 P. 497; Sandoval v. A., T. & S. F., supra.

[6] There is no controversy over the applicability of the principle that wherever, by either common law or statute law, a right of action has become fixed in one state, the right may, in comity, be enforced in another state, where defendant may be found, if not against the public policy of the law of the state in which the right of action accrued, and that the law of the place where the right was acquired or the liability was incurred will govern as to the right of action, while all that pertains merely to the remedy will be controlled by the law of the state where the action is brought. Northern Pacific Ry. v. Babcock, 154 U. S. 190, 14 S. Ct. 978, 38 L. Ed. 958.

We applied the principle in Keane Wonder Mining Co. v. Cunningham, 222 F. 821, where action was brought in a state court of Nevada upon a cause of action in negligence which arose in California. The case was removed to the federal court for the district of Nevada, where it was held that the case was governed by the statute of California, which provided that assumption of risk was no defense to an action of the kind being pursued, and that contributory negligence would not bar recovery, where plaintiff's contributory negligence was slight and that of the employer was gross in comparison, in which case damages might be diminished by the jury in proportion to the amount of negligence attributable to the employee. In Nevada assumption of risk and contributory negligence were available as valid defenses. We held that the courts of Nevada were open to those whose right of recovery depends upon the law of the state where the injuries were received, and that to permit in the court of the forum defenses which were not pleadable in the state where the cause of action arose would be "to deprive the plaintiff of a portion, if not the whole, of his right of action granted by the laws of that state." Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439, and Missouri Pacific v. Larussi (C. C. A.) 161 F. 66, were cited.

It is our opinion that the constitutional provision in Arizona lays down a rule of substantive law, rather than one pertaining to remedy or of procedure. Pritchard v. Norton, 106 U. S. 124, 1 S. Ct. 102, 27 L. Ed. 104. It cuts deep into the right, observed at common law, by which a defendant can obtain a decision by the court upon a proven state of facts. What is, at common law, within the power of the judge of the court to decide, is in all cases left to the jury, and their finding is conclusive on the court. Thus, although by the law of the place where an injury has been inflicted the power and duty of the judge are to pass upon a clearly established state of facts, a litigant may avoid the consequences of the exercise of those functions by going into a jurisdiction where the fundamental local law strips the court of that power by making the jury the sole arbiter of a question with conclusive force upon the court.

[7] It seems clear that such provision is essentially substantive, and that the federal conformity statutes do not require its application. Beutler v. Grand Trunk R. Co., 224 U. S. 85, 32 S. Ct. 402, 56 L. Ed. 679. Erstein v. Rothschild (C. C.) 22 F. 61; People's, etc. v. Ætna (C. C. A.) 74 F. 507; Sloss I. & S. v. S. C. & G. R. Co. (C. C. A.) 85 F. 133. In Dexter v. Edmands (C. C. 1898) 89 F. 467, Judge Lowell wrote of the distinction between remedy and substantive right as incapable of exact definition, and said that "the difference is somewhat a question of degree."

In Northern Pacific Ry. v. Babcock, 154 U. S. 190, 14 S. Ct. 978, 38 L. Ed. 958, the court held that in an action against a railroad company to recover damages for death of an employee, where the action is tried in a state other than that in which the contract of employment was made and in which the accident occurred, the right to recover and the limit of the amount of the judgment are governed by the lex loci, and not by the lex fori. That case was cited by the Supreme Court of Georgia in South Carolina & Georgia R. Co. v. Thurman (1899) 106 Ga. 804, 32 S. E. 863. In South Carolina there was a constitutional provision that "knowledge by an employee injured of the defective or unsafe character or condition of any machinery * * * shall be no defense to an action for injuries caused thereby except," etc., and the court held that the provision related, "not to a remedy, nor to any particular rule of evidence governing parties in the introduction of evidence, but to a substantial right thereby sought to be preserved." It was there argued in behalf of the railroad company that the constitutional provision

merely afforded a rule of evidence, and was therefore applicable only in the forum in which the case was tried, and that the law of evidence in Georgia should control.

The Babcock Case, supra, was also cited by the court in Slater v. Mexican N. R. Co., 194 U. S. 120, 24 S. Ct. 581, 48 L. Ed. 900, in an action brought in the federal court in Texas against a Colorado corporation operating a railroad from Texas to Mexico. Slater was killed in Mexico. It was held that, while the liability for wrongful death could be enforced in Texas, that did not mean that the action in any degree was subject to the lex fori with regard either to its quality or its consequences. Justice Holmes said, "But, as the only source of this obligation is the law of the place of the act, it follows that that law determines not merely the existence of the obligation, * * * but equally determines its extent," and, after citing the Babcock Case, supra, continued, "Therefore we may lay on one side, as quite inadmissible, the notion that the law of the place of the act may be resorted to so far as to show that the act was a tort, and then may be abandoned, leaving the consequences to be determined according to the accident of the place where the defendant may happen to be caught."

In Morrisette v. C. P. R. Co. (1904) 76 Vt. 267, 56 A. 1102, the Supreme Court of Vermont, in an action wherein plaintiff alleged negligence on the part of the railroad company at the place of accident in Quebec, plaintiff pleaded that the law of Quebec imposed upon the railroad company a duty to guard him, and that neither assumption of risk nor contributory negligence barred the right of recovery, but only operated to mitigate the damages. The railroad company objected to the admission of evidence of the law of Quebec, on the ground that it was in conflict with the law of Vermont and related, not to the right of action, but solely to the remedy. The court held that the evidence as to the law of contributory negligence related to the right of action; that by the law of Vermont it was a bar, but by the law of Canada it was not; and that the courts of Vermont ought not to refuse to apply the law of the foreign state, however unlike the law of its own, unless it was contrary to public policy and inconsistent with the dignity of the government whose authority was invoked.

In Caine v. St. Louis & S. F. R. Co. (1923) 209 Ala. 181, 95 So. 876, reported with a valuable note in 32 A. L. R. 793, the cause of action for personal injury resulting in death arose in Oklahoma, where the state Constitution contained a clause similar to that hereinabove quoted from the Constitution of Arizona. The court referred to the difficulties presented at times in drawing distinctions between matters which inhere in and pertain to the right of action itself, and those which pertain to the remedy and procedure, and cited Louisville & Nashville R. Co. v. Whitlow, 114 Ky. 470, 43 S. W. 711, 41 L. R. A. 614, where action was brought in Kentucky upon a cause of action ex delicto which arose in Tennessee. In Tennessee contributory negligence did not bar recovery, but served only to reduce the damages, while under the law of Kentucky contributory negligence was a complete defense. As the decisions of the Supreme Court of Kentucky were that the law of Tennessee should be applied in fixing the liability and the quantum of recovery, they were followed by the Alabama court. A like rule was followed in Arkansas in an action for damages arising out of a death following an accident in Oklahoma. St. Louis-S. F. R. Co. v. Bates (1924) 163 Ark. 335, 258 S. W. 992.

In Hiatt v. St. Louis-S. F. R. Co. (1925) 308 Mo. 77, 271 S. W. 806, the cause of action arose in Arkansas, where the statute created a presumption of negligence in certain cases. The Supreme Court held that the cause was governed wholly by the law of Arkansas, and that the decisions of the Supreme Court of that state should control; that the statute gave a substantive right and was not a procedural statute at all. The court added: "This is a substantive statutory law, and not a mere rule of procedure. The presumption inheres in the cause of action itself." See, also, St. Louis S. F. R. Co. v. Rogers (Ark. 1927) 290 S. W. 74; Goodrich on Conflict of Laws, 158; Minor on Conflict of Laws, §§ 196, 197; St. Louis & S. F. R. Co. v. Snowden, 48 Okl. 115, 149 P. 1083; Chicago, R. I. & P. R. Co. v. Jackson, 61 Okl. 146, 160 P. 736; Chicago, R. I. & P. R. Co. v. Hessenflow, 69 Okl. 185, 170 P. 1161.

We therefore must hold that the law of New Mexico, and not of Arizona, should have been applied in ruling upon the motion for a directed verdict.

[8] Plaintiff has argued that the railroad company failed to comply with the statute of New Mexico (section 4697, subd. 5, Com. Laws N. M. 1915), which empowers a railroad corporation to construct its railroad across, along, or upon any highway which its railroad shall intersect, cross, or run along, but requires that such corporation shall restore such highways so intersected to their

former state as near as may be, so as not to unnecessarily impair their use or injure their franchises. Plaintiff's witnesses varied somewhat as to whether the highway crossing where plaintiff was injured was exactly where it had been before the railroad was built, but as their evidence clearly showed that the location of that part of the highway which was occupied by the rails of the railroad had not been changed, that the crossing followed the natural surface and contour of the land, and that the grading was not more than sufficient to make the surface of the road smooth, the fact that the angle of approach to the crossing may have been slightly altered when the railroad was constructed did not materially affect the case. Chicago, R. I. & P. R. Co. v. Pounds (C. C. A.) 82 F. 217; Northern Pacific Ry. v. Alderson (C. C. A.) 199 F. 735; Northern Pacific Ry. v. Tripp (C. C. A.) 220 F. 286.

For error in overruling defendant's motion for a directed verdict upon the ground that plaintiff was guilty of contributory negligence, the judgment must be reversed, and the cause remanded for a new trial.

Reversed and remanded.